Argued and submitted May 25, 1984, affirmed in part, reversed in part and remanded
February 6, 1985

In the Matter of the Compensation of the
beneficiaries of Jerry Sassmen, Deceased.

AMOS et al,
*Petitioners,*

*v.*

SAIF CORPORATION,
*Respondent.*

(82-06927; CA A29586)

694 P2d 998

Robert J. Guarrasi, Eugene, argued the cause for petitioners. With him on the brief were Malagon & Associates and Christopher D. Moore, Eugene.

Donna Parton Garaventa, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Rossman and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimants, mother and child, seek judicial review of an order of the Workers' Compensation Board that adopted and affirmed the referee's order that denied their claims for benefits based on the accidental death of the alleged father of the child.

Mother married David Cantwell in December 1976. They had a son, David, Jr., on June 20, 1978. In October 1978, mother and Cantwell separated. She testified that she did not have sexual relations with him after October 1978. She filed for divorce from Cantwell on April 18, 1979. The divorce decree was entered on May 16, 1980, and became effective on July 15, 1980.

In February 1979, mother and Sassmen began to live together and to have sexual relations. She testified that during this period she did not have sexual relations with anyone else. Mother gave birth to a child, Raymond, on December 7, 1979. The paternity of Raymond has not been established by a court proceeding. *See* ORS 109.125.

Mother and Sassmen lived together until December 1980, or January 1981, when they separated. Thereafter, Sassmen continued to visit Raymond and to pay some of his expenses. Sassmen was killed in a compensable accident on January 12, 1982. Mother and Sassmen were not cohabitating at the time of the accident. Both were then unmarried and Sassmen was then cohabiting with another woman.

Raymond claimed death benefits under ORS 656.204(4):

"(4) If the worker leaves neither wife nor husband, but a child under the age of 18 years other than one described in subsection (3) of this section, $150 per month shall be paid to each such child until the child becomes 18 years of age."

Mother also claimed death benefits, asserting that she qualified under ORS 656.226:

"In case an unmarried man and an unmarried woman cohabited in this state as husband and wife for over one year prior to the date of an accidental injury received by one or the other as a subject worker, and children are living as a result of that relation, the surviving cohabitant and the children are

entitled to compensation under ORS 656.001 to 656.794 the same as if the man and woman had been legally married."

If mother qualifies under ORS 656.226, then ORS 656.204(2) applies:

"If the worker is survived by a spouse, monthly benefits shall be paid in an amount equal to 4.35 times 50 percent of the average weekly wage to the surviving spouse until remarriage. The payment shall cease at the end of the month in which the remarriage occurs. The surviving spouse also shall be paid $150 per month for each child of the deceased until such child becomes 18 years of age."

Mother would then receive benefits for Raymond under ORS 656.204(2), and Raymond would not receive benefits under ORS 656.204(4). SAIF denied both claims.

The appeals present these issues:

1. If Raymond's paternity has not been established under ORS chapter 109, may the Board determine that Sassmen is Raymond's father for purposes of determining benefits for Raymond and mother?

2. May the Board consider mother's testimony that her husband, Cantwell, did not have access to her at the time the child was conceived?

3. Is mother otherwise qualified under ORS 656.226 and, therefore, eligible for death benefits under ORS 656.204(2)?

■ A "child" includes an illegitimate child. ORS 656.005(6).[1] Neither claimant, however, is eligible for benefits unless Sassmen is the natural father of Raymond. Both mother and Raymond assert that Sassmen was the father. SAIF argues that paternity can only be established under ORS chapter 109, *see* ORS 109.070(6),[2] and that before paternity is

---

[1] ORS 656.005(6) provides:

" 'Child' includes a posthumous child, a child legally adopted prior to the injury, a child toward whom the worker stands in *loco parentis, an illegitimate child* and a stepchild, if such stepchild was, at the time of the injury, a member of the worker's family and substantially dependent upon the worker for support." (Emphasis supplied.)

[2] ORS 109.070 provides:

"The paternity of a person may be established as follows:

"(1) The child of a wife cohabiting with her husband who was not impotent or sterile at the time of the conception of the child, shall be conclusively presumed

established the parties must have a court trial. Consequently, SAIF argues that the Board lacked jurisdiction to determine Raymond's paternity and, therefore, to decide if either Raymond or mother is entitled to benefits.

The referee stated:

"SAIF contends that only the circuit court has jurisdiction to determine paternity. That may very well be in order to establish responsibility for support of the child or similar liability considerations, but such an issue is not presented here. The issue presented in this case deals only with a claim for compensation and a Referee has jurisdiction to decide any question concerning a claim. Consequently, I conclude I do have jurisdiction to decide all questions pertaining to this minor child's claim for the sole purpose of determining whether he is entitled to workers' compensation."

We agree with this portion of the referee's opinion. The referee and Board are not determining paternity under ORS 109.070(6), but only eligibility for worker's compensation benefits. ORS 656.704(1) provides:

"Actions and orders of the director, and administrative and judicial review thereof, regarding matters concerning a claim under ORS 656.001 to 656.794 are subject to the procedural provisions of ORS 656.001 to 656.794 and such procedural rules as the board may prescribe."

A claimant may request a hearing "on any question concerning a claim." ORS 656.283. The hearings division

"has the responsibility for providing an impartial forum for

---

to be the child of her husband, whether or not the marriage of the husband and wife may be void.

"(2) A child born in wedlock, there being no decree of separation from bed or board, shall be presumed to be the child of the mother's husband, whether or not the marriage of the husband and wife may be void. This shall be a disputable presumption.

"(3) By the marriage of the parents of a child after birth of the child.

"(4) By filiation proceedings.

"(5) By joint declaration of paternity filed with the Vital Statistics Unit of the Health Division of the Department of Human Resources in the form approved by the state registrar and with the fee prescribed in ORS 432.145. The Vital Statistics Unit shall prepare a new birth certificate under the procedure established by ORS 432.420.

"(6) By paternity being established or declared by other provision of law."

deciding all cases, disputes and controversies arising under ORS 654.001 to 654.295, all cases, disputes and controversies regarding matters concerning a claim under ORS 656.001 to 656.794, and for conducting such other hearings and proceedings as may be prescribed by law." ORS 656.708(3).

■ Although Raymond's paternity has not been established under ORS chapter 109, the Board could determine that Sassmen is Raymond's father to determine benefits for Raymond as a "child" under either ORS 656.204(4) or ORS 656.204(2) and mother's benefits under ORS 656.226 and ORS 656.204(2).

■■ The referee, however, denied both claims, because he believed that he could not consider all the evidence and that what he could consider did not overcome the presumption that Raymond was the child of mother and Cantwell. Although mother was separated from Cantwell when Raymond was conceived, he was born while Cantwell and mother were still married and is presumed to be Cantwell's son. OEC 311(1)(v); *see* ORS 109.070(2). This presumption may be overcome only by clear and convincing evidence of impotency or nonaccess. *Burke v. Burke,* 216 Or 691, 697, 340 P2d 948 (1959); *In re Rowe's Estate,* 172 Or 293, 299, 141 P2d 832 (1943).

Without objection from SAIF, claimants introduced evidence that:

a.  Raymond was given Sassmen's last name.

b.  Although provision was made for their child, David, Jr., Raymond was not considered as a child of mother and Cantwell in their divorce decree.

c.  Mother and Sassmen were cohabiting when Raymond was conceived.

d.  Sassmen listed Raymond as his child on his income tax return in 1979, although not in 1980. He tried to have his name placed on the birth certificate as Raymond's father, but the hospital would not allow it. He paid hospital and other expenses for Raymond.

e.  Mother testified that she and Cantwell were living in Texas before they separated. He brought her to Oregon, returned to Texas and later went to Germany with the military. Raymond was conceived four months later.

Except for evidence of mother's marriage to Cantwell, no evidence was introduced which indicated that Cantwell was or

could have been the father of Raymond.

■    The referee, however, applied "Lord Mansfield's Rule" that "proof of nonaccess of the married party may not be testified to by the married parties, either husband or wife." *See Burke v. Burke, supra,* 216 Or at 697; *In re Rowe's Estate, supra,* 172 Or at 304.[3] He considered as evidence only the divorce decree and the income tax returns. He then ruled that claimants had not met their burden of overcoming the presumption of Cantwell's paternity. Whatever may be the present validity of "Lord Mansfield's Rule" in other types of cases, that evidentiary rule should not be applied in workers' compensation hearings to exclude or ignore relevant evidence. The referee is "not bound by common law or statutory rules of evidence or by technical or formal rules of procedure," but must conduct the hearing in "any manner that will achieve substantial justice." ORS 656.283(6). The referee should have considered mother's testimony that Cantwell did not have access to her at the time of Raymond's conception. He should also have considered the other evidence in the record that permitted the inference that Raymond was Sassmen's child.

■ ■    On *de novo* review we consider the evidence the referee excluded. There was clear and convincing evidence to overcome the presumption that Raymond was the child of Cantwell and to establish that he was Sassmen's child for purposes of his own and mother's qualification for benefits.

■    Although evidence established that Raymond was born as a result of the cohabitation of mother and Sassmen and that they had cohabitated for more than 12 months before Sassmen's accident, the referee denied mother's claim, because she was "unmarried" for only six months of the

---

[3] In *Goodright v. Moss,* 2 Cowp. 291, 98 Eng. Rep. 1257 (1777), Lord Mansfield said "that the declarations of a father or a mother cannot be admitted to bastardize the issue born after marriage * * * is a rule founded in decency, morality and policy, that they shall not be permitted to say after marriage that they have had no connection and therefore that the offspring is spurious." Professor McCormick has stated:

"This invention of the great jurist, though justly criticised by Wigmore as inconsistent, obstructive and pharisaical, has been followed by later English decisions until recently abrogated by statute, and has been generally accepted in this country. A few courts have wisely rejected it by construing the general statutes abolishing the incompetency of parties and of spouses as abolishing this eccentric incompetency also, but most courts have not yielded to this argument." McCormick, *Evidence* (2nd ed 1972) 146. (Footnotes omitted.)

cohabitation period. Whether ORS 656.226 requires that the natural mother and father both be unmarried during the entire required period of cohabitation, or only at the time of the accidental injury, mother, nonetheless, does not qualify under this statute and; therefore, also does not qualify under ORS 656.204(2). ORS 656.226 requires that the period of cohabitation include the time of the accidental injury. The statute states that the "surviving cohabitant" is entitled to compensation "the same as if the man and woman had been legally married." Mother was not a "surviving cohabitant" of Sassmen at the time of the accidental injury, because she was not then cohabiting with him.[4]

■ Accordingly, the Board's order that denied mother benefits under ORS 656.226 and ORS 656.204(2) for herself and Raymond is affirmed, because mother does not qualify under ORS 656.226. Raymond, however, is a child of Sassmen and is entitled to benefits under ORS 656.204(4).

Affirmed as to Christy Amos' claim; reversed and remanded as to Raymond Sassmen's claim with instructions to accept the claim.

---

[4] If the statute did not require the period of cohabitation to extend to the time of the accidental injury, a deceased worker could leave surviving more than one "cohabitant," each of whom could qualify for the benefits of a "spouse." Furthermore, the statute does provide benefits to a child of a deceased subject worker, but not to his divorced spouse. *See* ORS 656.204(3). We do not believe that the legislature intended that a former cohabitant be given a status superior to that of a divorced spouse.