Michael E. ZAHRADNIK, Appellant,

v.

Louis W. SULLIVAN, Secretary
of Health and Human
Services, Appellee.

No. 91–1926.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1991.

Decided May 29, 1992.

Timothy C. Harlan, Columbia, Mo., for appellant.

Eric Tyrone Tolen, St. Louis, Mo. (Joseph B. Moore, St. Louis, Mo., Frank V. Smith, III and Janet Braggs, Kansas City, Mo., on brief), for appellee.

Before LAY,* Chief Judge, WOLLMAN and HANSEN, Circuit Judges.

LAY, Chief Judge.

This appeal arises from an application for surviving child's insurance benefits under the Social Security Act, 42 U.S.C. § 402 (1988). The application for insurance benefits was originally brought by Delores Brown, as the natural mother and next friend of her son, Michael E. Zahradnik.[1] The Secretary of Health and Human Services (Secretary) denied benefits to Zahradnik on the ground that he had not independently established paternity by the alleged father/wage earner, Aage Hansen, under Oregon law and was therefore barred from claiming entitlement to benefits under the Social Security Act. The magistrate recommended affirmation of this ruling and the district court adopted the magistrate's recommendation.

---

* The HONORABLE DONALD P. LAY was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

1. Occasionally in this opinion the child, Michael Zahradnik, is referred to as the petitioner in these proceedings.

A request for benefits is to be evaluated under 42 U.S.C. § 416(h)(2)(A) (1988), which holds that when considering whether or not a child is to receive insurance benefits, "the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which the insured individual ... was domiciled at the time of his death...." The administrative law judge (ALJ), on behalf of the Secretary, found that petitioner had failed to satisfy Oregon law on intestate succession because it had not been established by a court proceeding that Hansen was petitioner's natural father. The ALJ held that even if the evidence were satisfactory to show that Hansen was petitioner's father, benefits would be denied on the ground that the requirement under 42 U.S.C. § 416(h)(3)(C)(ii) that the wage earner had either acknowledged in writing that Zahradnik was his son or been ordered by a court to contribute to Zahradnik's support because Zahradnik was his child had not been fulfilled. On appeal, the petitioner limits his claim to a request for benefits under 42 U.S.C. § 416(h)(2)(A).[2]

█ We find that the ALJ misconstrued Oregon law and hold that under Oregon law petitioner may establish his right to inherit in a proceeding for social security benefits without having first had paternity established in an independent state paternity suit. We further find that Zahradnik has established that Hansen was his father for purposes of inheriting under Oregon law and that substantial evidence does not exist on the record as a whole to substantiate the Secretary's denial of benefits. We therefore vacate the judgment below and remand this claim to the Secretary with directions that judgment be entered in favor of the petitioner.

The ALJ recognized that under 42 U.S.C. § 416(h)(2)(A) the Secretary must apply the law that "would be applied in determining the devolution of intestate personal property

ty by the courts of the State ... in which the insured individual was domiciled at the time of his death...." There exists no dispute that Oregon was Hansen's domicile on the date of his death. The ALJ then reviewed Oregon Revised Statutes section 112.105 (1989), which reads in relevant part:

(1) For all purposes of intestate succession, full effect shall be given to all relationships as described in ORS 109.-060, except as otherwise provided by law in the case of adoption.

(2) For all purposes of intestate succession and for those purposes only, before the relationship of father and child and other relationships dependent upon the establishment of paternity shall be given effect under Section 1 of the section:

(a) The paternity of the child shall have been established under ORS 109.-070 during the lifetime of the child or;

(b) The father shall have acknowledged himself to be the father in a writing signed by him during the lifetime of the child.

The ALJ held that section 112.105(2)(b) was not satisfied on the ground that there was no evidence that Hansen had ever acknowledged that he was Zahradnik's father. The ALJ then turned to section 109.070 (1989), which reads:

The paternity of a person may be established as follows:

(1) The child of a wife cohabitating with her husband who was not impotent or sterile at the time of the conception of the child, shall be conclusively presumed to be the child of her husband, whether or not the marriage of the husband and wife may be void.

(2) A child born in wedlock, there being no decree of separation from bed or board, shall be presumed to be the child of the mother's husband, whether or not the marriage of husband and

2. The ALJ held that the claimant did not qualify under 42 U.S.C. § 416(h)(2)(B) (1991) or § 416(h)(3). Petitioner asserts that he has never made a claim under either of these sections. The ALJ nevertheless spent a great portion of

his opinion addressing these sections. In view of petitioner's limited claim, we address only petitioner's claim of paternity under Oregon law.

wife may be void. This is a disputable presumption.

(3) By the marriage of the parents of the child after the birth of the child.

(4) By filiation proceedings.

(5) By joint declaration of paternity filed with the Vital Statistics Unit of the Health Division of the Department of Human Resources in the form approved by the state registrar and with the fee prescribed in ORS 432.145. The Vital Statistics Unit shall prepare a new birth certificate under the procedure established by ORS 432.420.

(6) By paternity being established or declared by other provision of law.

The ALJ viewed section 109.070(1)–(5) as clearly inapplicable in light of the evidence adduced. In his consideration of whether petitioner met the requirement of subsection (6), the ALJ found that petitioner failed to initiate any action under section 109.070 or any other Oregon statute to establish paternity. He therefore found that petitioner was precluded from claiming the right to lawful inheritance from the wage earner under Oregon law.

We conclude that the ALJ erred as a matter of law in requiring Zahradnik to have established paternity in an independent state court proceeding. The ALJ failed to follow settled Oregon case law construing sections 109.070(6) and 112.-105(2)(a). In *Thom v. Bailey*, 257 Or. 572, 481 P.2d 355 (1970), the Oregon Supreme Court allowed establishment of paternity through a declaratory judgment action in a probate proceeding to revoke a decedent's will. The court found nothing that demonstrated a legislative intent

to require that the term "other provision(s) of law" by which paternity may be established was intended to be limited to provisions which included specific limitations upon the establishment of paternity relating to the *manner of proof* by which paternity could be established, ei-

ther for purposes of inheritance or for any other purpose. The fact that specific limitations were included in ORS 109.-125 to 109.230 (providing for filiation proceedings) does not itself require such a result. Indeed, ... any reasonable inference of legislative intent would appear to be [to] the contrary.

*Thom*, 257 Or. at 589, 481 P.2d at 363–64 (emphasis in original). More recently, the Oregon Court of Appeals rejected the argument that paternity can only be established under section 109.070 through a formal state trial limited to that claim. *See Amos v. SAIF Corp.*, 72 Or.App. 145, 151, 694 P.2d 998, 1001 (1985) (although paternity had not been established under section 109.070, the Workmen's Compensation Board could determine that an employee was the father of a child born out of wedlock to determine benefits for "a child" under workmen's compensation law).

Section 42 U.S.C. § 416(h)(2)(A) provides in relevant part:

(2)(A) In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. *Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.*

42 U.S.C. 416(h)(2)(A) (emphasis added).[3]

The ALJ, district court, and this court are each empowered by Oregon law to de-

---

**3.** Petitioner relies upon the Secretary's own regulations as to the general means by which he can establish proof that the wage earner was his natural father. This regulation reads:

OREGON

A child born at anytime, whether in that State, or another, is considered the legitimate child of its natural father, regardless of the domicile of the father at the time the child was born provided the father was domiciled in Oregon sometime after the birth of the

termine paternity and heirship in the same proceeding. Oregon has expressly stated that the authority to deal with the question of paternity in an heirship proceeding is clearly implied by virtue of the fact that the resolution of that particular issue would necessarily be a prerequisite to a determination of heirship and that the availability of declaratory relief is merely an alternative to proceeding under the heirship statutes. *See Wolf v. Goin,* 26 Or. App. 23, 25, 552 P.2d 258, 260 (1976). Thus, we think it clear that the ALJ erred under Oregon law by rejecting out-of-hand petitioner's attempt to establish that the wage earner was his natural father in this proceeding. Under Oregon Revised Statutes section 112.105(2)(a, b), no predicate action in the state courts was necessary in order to establish petitioner's right to benefits.

■ We now turn to the evidentiary record and the controlling principles of Oregon law.

Danish-born Aage Hansen was married to Kirsten Hansen, also a native of Denmark. Mrs. Hansen and their three children resided in Salem, Oregon. Hansen was never married to Brown. Hansen died on June 23, 1979, in Great Falls, Montana.

Brown and Hansen first met in 1969 when she was an instructor to Hansen's mentally retarded son. In 1973 Hansen left his old employment and became the *Coordinating Director for Disabled Citizens* in Oregon. Brown left her teaching position and began working for Hansen as his secretary in the fall of 1974. Hansen accepted new employment in March of 1975 as the Executive Director of the Montana Association for Retarded Citizens. He went to Montana specifically for that job. His wife and their children remained behind in Oregon, ostensibly only until a decision was made as to whether Hansen want-

ed to remain in that job for any length of time. Hansen visited his family in Oregon while living most of the year in Montana. Two months later, in May of 1975, Brown separated from her husband and moved from her native Salem, Oregon, to Montana, where she was employed as Hansen's secretary. Brown alleges that shortly thereafter she and Hansen began an affair. Hansen suffered a heart attack November 18, 1976, and returned to Oregon for a visit after his discharge from the hospital. Brown said that Hansen told her he was pleased that she was pregnant and that he would leave his wife and marry her after the child arrived.[4] When Zahradnik was born, Brown was still married to Philip Virga, but had been separated from him since May of 1975. Brown testified that she was involved with Hansen beginning in 1975 and that she had no sexual relations with any other man during the time of conception or for several years thereafter.

Michael Zahradnik was born in Helena, Montana, on January 19, 1977. His birth certificate lists his mother as Dolores Lucille Zahradnik (now Dolores Brown). The birth certificate, signed by Brown, did not name the child's father. She testified that she later aborted two other fetuses he had fathered after he told her that he had changed his mind and would not leave his wife for her and that he could not afford to help her care for any other children. Hansen did purchase toys, food, and clothing for Zahradnik and gave Brown small amounts of money to be used for Zahradnik's benefit.

In January of 1979 Hansen went by himself to Denmark to visit his mother and siblings for the first time since he had immigrated to the United States. He wrote several letters to his wife and their three children in Oregon and several letters to Brown and Zahradnik in Montana. In

---

child. If the father was not domiciled in Oregon at the time of his death, see Arizona entry. In the case of a posthumous child, if the father was domiciled in Oregon at his death, the child is his legitimate child under Oregon law. If the law of Oregon applies, the natural father of a child born at anytime has the status of a parent.

Social Security Administration Program Operations Manual System, GN 00306.135 (TR 542).

**4.** A Lamaze or birthing tape, apparently made specifically for Brown and featuring Hansen's voice, was entered into evidence.

the letters to Brown, Hansen referred to Zahradnik as "my G.L.P.," which Brown says stood for "Great Little Pal." In one of the several letters he wrote to Brown while visiting his family in Denmark, Hansen wrote:

> Often when I go places or see things, I say to myself, I wish Dolores and my G.L.P. were here to share this; I know Dolores would enjoy it. Maybe what I am really saying is that before too long we should all three take a trip to Denmark together (you, G.L.P. and me). Let's talk about it sometime. It takes planning.

Hansen returned from his trip to Denmark in the spring of 1979. He died of a heart attack on June 23, 1979, in Montana. Brown and Zahradnik, who knew Hansen's legitimate family, attended the funeral. The two families were very close. One of Hansen's daughters, Katherine Lance, went to visit Brown and Zahradnik in 1984. Lance testified that during that visit, Zahradnik told her that his "real father died of a heart attack." Lance was confused by the remark and looked to Brown, who then said "[w]e're going to have to talk," and proceeded to explain to Lance that Zahradnik was Hansen's child, Lance's half-brother.

Brown filed for benefits for Zahradnik on May 21, 1984. Brown had in her possession at that time a number of personal items belonging to Hansen, including cancelled checks. She also had a number of letters, valentines and mother's day cards sent to her by Hansen. The claim was allowed following a determination by the Social Security Administration office in Oregon that Zahradnik was Hansen's child. Notification was sent to Hansen's widow that there would be a downward adjustment in her family's benefits due to Zahradnik's claim to benefits. Mrs. Hansen filed a protest. The Social Security Administration wrote Mrs. Hansen and stated that she had previously been overpaid benefits and that she would need to pay back these amounts or they would be deducted from future benefits. Mrs. Hansen requested a reconsideration of Zahradnik's claim to benefits. A reconsidered determination was sent to Mrs. Hansen on October 22, 1985, again stating that Zahradnik was entitled to benefits. Mrs. Hansen then filed a request for a hearing. A hearing was held before an ALJ who determined that Zahradnik was not entitled to child's insurance benefits. Brown appealed, and the case was reheard. The ALJ again found that Zahradnik was not entitled to benefits. The appeals council denied Brown's request that it review the decision. Brown appealed that decision to the United States District Court which, on March 14, 1991, adopted the recommendation of the magistrate to affirm the final decision of the Secretary. This appeal followed.

Under Oregon law, the petitioner's testimony must be corroborated by "some substantial fact or circumstance, which independent of the petitioner's testimony, tends to connect the defendant with fatherhood of the child." *Moore v. Gruetter*, 24 Or. App. 137, 139, 544 P.2d 1047, 1047 (1975) (citations omitted). However, the corroboration need only be sufficient to "fairly and legitimately" tend to connect the defendant with the conception of the child. *Id.*

In *State ex rel. S. v. V.*, 17 Or.App. 392, 521 P.2d 1319 (1974), the court clarified what constitutes "corroboration:"

> Corroboration, as used in the statute under which this prosecution was had, means evidence which does not emanate from the mouth of the prosecutrix but such other and independent evidence as adds to, strengthens, confirms, and corroborates her. It must be of some substantive fact or circumstance which, independent of her testimony, tends to connect the defendant with the commission of the offense. It may be either direct or circumstantial, or be wholly circumstantial, and however slight must tend to identify the defendant as the guilty party. It is not necessary that the testimony of the prosecutrix be corroborated in every particular or upon every material point. But there must be a sufficient amount of confirmation to satisfy the jury of the truth of her testimony, so that the case shall not rest upon her

credibility alone, however credible her testimony may be * * *.

*State ex rel. S.,* 17 Or.App. at 393, 521 P.2d at 1319 (quoting *State ex rel. Dickerson v. Tokstad,* 139 Or. 63, 67, 8 P.2d 86, 88 (1932)).

In *Thom v. Bailey,* 257 Or. 572, 481 P.2d 355 (1970), Thom brought a proceeding to determine heirship in which she alleged that she was the illegitimate daughter of the deceased, James Elliott, and was entitled to inherit his entire estate. There had been no prior adjudication of paternity. Thom's mother testified that she had been date-raped by Elliott and that she became pregnant with Thom as a result. She denied having intercourse with any other man during the time of conception, but admitted to intercourse with two other men just three months after conception would have occurred. Prior to his death, Elliott admitted to having intercourse with Thom's mother, but denied paternity. When Thom was born, her mother did not indicate the name of the father on the birth certificate. Thom's mother testified that she told the doctor that Elliott was the father. Thom's mother later married another man. Elliott and his wife had unsuccessfully attempted to have children. Baily, Elliott's nephew, offered evidence that four years after Thom's conception and the alleged intercourse, medical tests revealed that Elliott, who died of testicular cancer, was sterile. Expert witnesses confirmed that the medical records indicated that Elliott's tests showed an absence of sperm. While one expert witness opined that Elliott would have been sterile at the time of Thom's conception, another indicated that the absence of sperm at the time of the test may have been the result of a temporary blockage and that Elliott may well have been potent at the time of intercourse. *Thom,* 257 Or. at 576, 481 P.2d at 357. No other significant evidence was offered. In the opinion of the Oregon Supreme Court, that

evidence was sufficient to establish that Elliott was Thom's father by "clear and convincing" weight, not merely by the requisite preponderance of the evidence.[5]

In the present case, Brown's testimony that Hansen was Zahradnik's father was strongly corroborated. One disinterested individual, Dianne Phelps, testified that Hansen told her that he was Zahradnik's father. She also testified that Hansen said that he knew that his name was not listed on Zahradnik's birth certificate and that he wanted his name listed in order that Michael could receive benefits in the event he should have another heart attack or something else should happen to him. Mr. and Mrs. Henry Wein, who knew Hansen and Brown, were told by Brown during her pregnancy that Hansen was the father. They believed this to be true, in part because of what they perceived as a strong resemblance between Hansen and Zahradnik. In addition, Hansen wrote Brown and Zahradnik several letters when he was away from them. The number of letters, by itself, does not support Brown's contention that Hansen was Zahradnik's father. It is the content of some of the letters, particularly Hansen's expressed desire to take Brown and Zahradnik to Denmark, his homeland, which corroborates Brown's assertion that Hansen was Zahradnik's father. Some of the other evidence which tends to support the contention includes the fact that people regarded Hansen and Brown as a social couple, that Hansen, Brown and Zahradnik frequently took vacations together, and that Hansen, who earned little when he did work, contributed money and goods to benefit Zahradnik. Indeed, the weight of the corroborating evidence that at the time of conception Zahradnik's mother was exclusively involved with Hansen, and that Hansen was the father of Brown's son Michael Zahradnik is more than a preponderance. We deem the

---

5. In a similar case, *Amos v. SAIF Corp.,* 72 Or.App. 145, 694 P.2d 998 (1985), the court found persuasive the "mother's testimony that [no other man] had [sexual] access to her at the time of [her son's] conception." In upholding an award of dependency under the Workmen's

Compensation Act, the Oregon Court of Appeals observed that "[the referee] should also have considered the other evidence in the record that permitted the inference that [the boy] was [the deceased's] child." 72 Or.App. at 151, 694 P.2d at 1002.

evidence sufficient to satisfy the corroboration statute.

We find substantial evidence on the record as a whole does not support the Secretary's decision to deny benefits. We therefore reverse the decision of the district court and find that Michael Zahradnik is entitled under Oregon law to inherit from the estate of Hansen and that Zahradnik is, accordingly, entitled under 42 U.S.C. § 416(h)(2)(A) to partake in benefits.

HANSEN,[1] Circuit Judge, concurring in part and dissenting in part.

I concur, with some reservation, in the majority's conclusion that Oregon Revised Statute § 109.070(6) permits the Secretary to determine paternity. I respectfully dissent, however, from the majority's conclusion that the Secretary's finding that paternity has not been established is not supported by substantial evidence on the record as a whole.

I agree that under Oregon case law the Secretary is empowered to determine paternity pursuant to Oregon Revised Statute § 109.070(6). *See e.g., Thom v. Bailey*, 481 P.2d 355 (1971) (en banc); *Clarkston v. Bridge*, 539 P.2d 1094 (1975) (en banc). I see, however, a potential difficulty in applying the requirements attendant to that statute. In *Clarkston*, the Supreme Court of Oregon concluded that "in the absence of an indication of legislative intent to the contrary, the procedures for establishing paternity in a support action under URESA [Uniform Reciprocal Enforcement of Support Act] should parallel those mandated by the legislature for establishing paternity in other support proceedings." *Clarkston*, 539 P.2d at 1100. Those procedures include a right to a jury trial on the issue of paternity upon the demand of either party. Or.Rev.Stat. § 109.135(1). I am not aware of any authority empowering the Secretary to conduct a jury trial. *See* 42 U.S.C. § 405(b) (setting forth procedures for administrative determination of entitlement to benefits). Additionally, a federal court's limited review of the Secretary's determi-

nations does not provide for a jury trial. *See* 42 U.S.C. § 405(g) (setting forth procedures for judicial review of Secretary's decision). *Clarkston* left open the question of whether all of the procedural protections required in filiation proceedings are required in an URESA proceeding, *Clarkston*, 539 P.2d at 1100 n. 13, and by implication left open the question of whether all of those protections are required in determining paternity under "other provision[s] of law."

In this case, Kirsten Hansen demanded a jury trial. As the issue of whether the Secretary properly refused to provide a jury trial on the issue of paternity has not been presented on appeal, it is not necessary to address that difficult question at this time. Accordingly, I leave resolution of that issue for another day.

Where I part company with the majority's decision is the majority's conclusion that substantial evidence on the record as a whole does not support the Secretary's decision to deny benefits, but rather the evidence requires a finding of paternity and an award of benefits.

The Secretary's finding of no paternity must be affirmed if supported by substantial evidence appearing on the record as a whole. *See e.g., Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir.1990); *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989); 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The court must take into account evidence which fairly detracts from the ALJ's findings. *See Hall v. Bowen*, 830 F.2d 906, 911 (8th Cir.1987). Substantial evidence requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by

---

1. While the decedent wage earner and I share the same last name and a Danish heritage, we were not related within any known degree of consanguinity or affinity.

substantial evidence." *Cruse*, 867 F.2d at 1184 (citing *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026-27, 16 L.Ed.2d 131 (1966)).

Under Oregon law, corroboration of the mother's assertion of paternity "must be provided by evidence of some substantial fact or circumstances which, independent of the mother's testimony, 'fairly and legitimately' tends to connect the alleged father with the conception of the child." *Matter of Gridley*, 558 P.2d 1277, 1280 (1977) (citing cases). *See also* Or.Rev.Stat. § 109.-155(1). The burden is on the party asserting paternity to establish paternity by a preponderance of the evidence. *Gridley*, 558 P.2d at 1279; Or.Rev.Stat. § 109.-155(2).

The ALJ found that the evidence did not establish paternity by a preponderance of the evidence. The ALJ further found that the evidence showed the possibility of a sexual relationship between Aage Hansen and Delores Brown but did not show that Michael Zahradnik was the product of any such relationship. The ALJ concluded that the evidence showed that Hansen was a good friend of Brown and Michael but did not persuasively connect Hansen to Michael's conception.

In assessing the testimony of the witnesses, the ALJ found that Brown's credibility was "less than complete" because she admitted to having a sexual relationship with Hansen while remaining a good friend of Hansen's wife and frequently visiting Hansen's family. The ALJ further noted that Brown had not told anyone that Hansen was Michael's father until after Hansen had died when Hansen was no longer around to confirm or deny her claim. With respect to the one witness who claimed that Hansen told her that he was Michael's father, Diane E. Phelps, the ALJ discounted her testimony. The ALJ found that the

statement related an alleged conversation with Hansen more than five years earlier and "memories can be less than clear" and that the alleged statements of paternity could be construed as showing Hansen's interest in children in general.

In my view, the majority fails to acknowledge relevant evidence of record and gives undue weight to other evidence. Hansen's daughters, Katherine and Karen, who stayed with Aage Hansen in Montana during part of the summers of 1975 and 1976, testified that they were unaware that Hansen and Brown were involved in a sexual relationship. Katherine also testified that her father had never made any remark as to whether or not he was Michael's father. Kirsten Hansen testified that she was unaware of her husband having an affair with anyone. Kirsten also testified that Brown had told her that Philip Virga, Brown's husband at the time, was Michael's father.[2] With regard to the Mother's Day card being sent by Hansen to Brown on Michael's behalf, the ALJ concluded that the fact a person selects a Mother's Day card on the behalf of a minor child does not establish paternity. With respect to the monetary support allegedly provided by Hansen, the ALJ found that there were: (1) three checks from Hansen to Brown in the amounts of $75, $80, and $100, none of which stated they were for Michael's support and which could have been for other purposes, and (2) purchases of various items alleged by Brown in the amount of $297, none of which were substantiated by receipts. Brown also testified that Hansen gave her small amounts of cash on 30 to 50 different occasions. Hansen did not pay any expenses associated with Michael's birth.

In my view, the evidence taken as a whole, while supporting a finding of paternity, equally supports the Secretary's find-

**2.** At the hearing before the ALJ, Brown testified that she lied about Philip being the father in order to protect Aage Hansen. The 1981 divorce decree between Delores Virga (Brown) and Philip Virga states, without further explanation, that Michael is not Philip's child and that Michael's natural father is deceased. There is some suggestion in the record that Delores and

Philip stipulated to that language. I note that Oregon Revised Statute § 109.070(2) creates a rebuttable presumption that a child born in wedlock is the husband's child if there is no decree of separation from bed or board. Michael was born four years prior to the entry of the divorce decree.

ing that paternity has not been established. Because the evidence is susceptible to two opposite rational and reasonable inferences, I would find the Secretary's determination to be supported by substantial evidence on the record as a whole.

Accordingly, I would affirm the district court and uphold the Secretary's decision.