Carroll, Appellant, *v.* Willow Brook Co. and Employers' Liability Assurance Corp.

Argued March 14, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

George W. Aubrey of Aubrey, Friedman and Senger, for appellant.

T. McKeen Chidsey of Chidsey, Maxwell & Frack, for appellee.

OPINION BY STADTFELD, J., April 17, 1933:

This is an appeal by claimant from the judgment of the court of common pleas of Northampton County, reversing the Workmen's Compensation Board, which affirmed the findings of fact, conclusions of law and award of the referee, under which compensation was awarded for the death of the decedent to his widow for herself and her minor daughter, and entering judgment in favor of defendants.

Carroll, the decedent, was a professional horse trainer and jockey, in the employ of the Willow Brook Company. On November 5, 1930, at about 2:15 P. M., he was seen riding one of the horses "Lady Blake", along the bridle path on the Willow Brook property. He was then engaged in the duties of his employment. He was not seen again by anyone, so far as the testimony discloses, until about an hour later, when he was found lying in a field of the defendant company, dead. The horse was discovered tied to a fence rail about eighty yards from the spot where the decedent's body lay. The horse's right front leg was broken.

The saddle had been unbuckled and removed from the horse and was placed on the ground about fifteen feet away from the horse. The body of the decedent was lying to the west of the horse in the direction where the nearest telephone might be found, and also in the same line of direction where men were working in a field some distance away. On the bridle path, not far from where the horse was tied, was found a loose stone about two inches in diameter and the marks on the ground indicated that the horse had stumbled at this point. There was no ground or soil on the horse which would tend to show that the horse had fallen.

When the body was discovered, no sign of any external injury on the body was found, and a subsequent examination by the coroner's physician revealed none. Prior to the decedent's death he had for some years been in apparently good health, although he had suffered a gun-shot wound in his leg during the World War and was in the hospital for a period of fourteen months. He was compelled to undergo a bone and nerve grafting operation, and at the time of his death he was still receiving disability compensation on account thereof. An autopsy was performed by the deputy coroner, but the findings were negative, although the autopsy was not complete as to the head and chest; because of the widow's objection, the body was not exhumed.

The main question involved in this case is whether the claimant's husband, the decedent, died as the result of an accident while in the course of his employment, or from natural causes.

The court below found that there was not sufficient evidence to sustain either the referee's or the Board's conclusion that the decedent came to his death from an injury caused by an accident in the course of his employment.

Doctor Reichbaum, as deputy coroner, set down in

the death certificate that the cause of death was a "fall from saddle horse, fractured skull, cerebral hemorrhage and brain contusion". He admitted, however, at the hearing, that the cause of death assigned by him in the death certificate was merely conjectural.

The referee found that there were no visible signs of injury upon decedent's body. A postmortem was performed upon the body of decedent by Dr. Reichbaum, deputy coroner. Decedent's stomach and intestines were examined by Dr. Reichbaum, also by Dr. Wilson of Lafayette Medical School, Easton, Pennsylvania. The head and chest of decedent were not posted due to the widow's failure to acquiesce. There was no evidence found by either Dr. Reichbaum or Dr. Wilson from their examination of the abdominal organs and cavity of decedent which would indicate a cause of death. Dr. Reichbaum testified decedent's death in his opinion was due to cerebral hemorrhage. He admitted, however, that there was not a scintilla of evidence that he fell from a horse, and he did not find any marks on the body when he examined it and that if you eliminate the fall from the horse, it would indicate that it was a natural death.

Dr. Earp, called by claimant, testified to the same effect as Dr. Reichbaum. His conclusion was based on the fact that the autopsy revealed no natural cause of death, and without the evidence of a natural cause of death, and the fact that the man was in good condition before his death, he "would be inclined to favor an accidental cause of death."

Dr. Correll, surgeon in chief at the Easton Hospital, called in behalf of defendant, testified that there could not have been a fall from the horse without some external evidence of it upon the decedent's body, and that while it was impossible in his opinion to definitely fix the cause of death, the more probable cause in his opinion was septic absorption by the circulatory sys-

tem as a result of the gunshot wound and the long hospitalization with bone and nerve grafting operation which caused an embolism or thrombosis. Dr. Reichbaum agreed with Dr. Correll and admitted that if there had been a fall from the horse there would have to be some external injury evidencing it.

The referee found as a fact that death was due to cerebral hemorrhage resulting from violence to the physical structure of the body of decedent when the horse stumbled and fell. The testimony, however, does not in any way support such a finding. There is no evidence whatever of violence to decedent's body. While it may be assumed that the horse stumbled, because of the loose stone, and the fact that the horse's leg was broken, we can not infer or assume, in the absence of any abrasion, bruise or other mark upon the decedent's body, that he fell from the horse or suffered any other physical injury thereby. The referee must have assumed that the rider fell, and upon this based the further assumption that this brought on a cerebral hemorrhage of which there was no proof whatever. The law does not permit an inference to be drawn from an inference, nor a presumption from a presumption. Hall v. Penna. R. R. Co., 60 Pa. Superior Ct. 235; Mankin v. Parry, 70 Pa. Superior Ct. 558; Phila. etc. Rwy. Co. v. Henrice, 92 Pa. 431.

There was no evidence of a fall from the horse, nor did the referee find that there had been a fall. The absence of such evidence, combined with the fact that the decedent was found at a distance of about eighty yards from the horse, that he had evidently dismounted, carefully removed the horse's saddle and tied her, the absence of any bruise, abrasion or scratch on his body nor any dirt upon or damage to his clothing, negatives any presumption of an accident to decedent.

We have carefully read all of the testimony and we

can find no legally competent evidence to sustain the finding of the referee or the Board.

The burden of proof was of course upon the claimant in this case. ''Where an injury may be the result of one of two or more causes, for only one of which defendant is liable, the burden is on plaintiff to individuate that one as the proximate cause of his damage (Sullivan v. Balt. & Ohio R. R. Co., 272 Pa. 429), otherwise there can be no recovery: Zimmerman v. Weinroth, 272 Pa. 537, 539; Miller v. Director Gen. R. R. 270 Pa. 330; Bruggeman v. York, 254 Pa. 430, 435. Furthermore, the burden of proof is not met by the testimony of a witness when so conflicting as to render any inference drawn therefrom a mere guess: Goater v. Klotz, 279 Pa. 392, 396; Zenzil et al. v. Del. Lacka. & W. R. R. Co., 257 Pa. 473; Mulligan v. Lehigh Traction Co., 241 Pa. 139; Cawley v. Balt. & Ohio R. R. Co., 44 Pa. Superior Ct. 340. Claimant's affirmative answer to the referee's question, 'Did the sun get you?' is of no value in determining the cause of his disability, as he stated no fact in support of that conclusion.'' Gausman v. Pearson Co., 284 Pa. 348 at p. 352.

In the instant case, there is no evidence of any kind showing violence to the physical structure and there is no medical opinion based upon facts that would warrant a finding that decedent came to his death from an injury caused by accident.

It is our duty to pass upon the question whether there is legally competent evidence to sustain the finding of the Board in favor of claimant. In our opinion, the conclusions of the two medical experts called on her behalf are merely guess-work and conjecture, and not based on any established or admitted facts, nor was there a definite medical opinion as to the actual cause of death. If the secret of death lay within the head, heart or lungs, only the claimant can be blamed for

not having such evidence available in order to meet her burden of proof, in refusing to permit a post-mortem as to these organs. A rupture of a blood vessel causing hemorrhages may result from a natural as well as an accidental cause, and its occurrence does not prove an accident. Riley v. Carnegie Steel Co., 276 Pa. 82.

The controlling finding of the Board was properly rejected by the court below, in an able and exhaustive opinion by Stotz, J., because not supported by any legally competent evidence.

The assignments of error are overruled and judgment affirmed.