245 N.J. Super. 39 (1990)
583 A.2d 782
IN THE MATTER OF THE ESTATE OF PETER ROGERS, SR., DECEASED.
Superior Court of New Jersey, Appellate Division.
Submitted November 7, 1990.
Decided December 17, 1990.
*41 Before Judges BRODY, GRUCCIO and D'ANNUNZIO.
John F. Rhody, attorney for appellants.
Klatsky & Klatsky, attorneys for respondents (John A. Haulenbeek, of counsel and on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
This is an appeal from a judgment declaring that four claimants (plaintiffs) to this intestate estate are the decedent's out-of-wedlock children. Plaintiffs' assertion of paternity is resisted by the decedent's four children (defendants) of his marriage to E.P., who herself has no interest in the estate because she and the decedent had divorced before he died. The underlying issue is whether the court had the authority to order E.P., a nonparty witness, to submit to blood tests to enable it to adjudicate the paternity issue. We hold that the court had such authority under its inherent power to compel the production of evidence even though that authority is not found in the Parentage Act, N.J.S.A. 9:17-38, et seq.
The parties are all adults. Plaintiffs were conceived after their mother had separated from her husband and while the decedent was married to and living with E.P. Because plaintiffs' mother was married when they were born, her husband is presumed to be their natural father. N.J.S.A. 9:17-43a(1). That presumption "may be rebutted in an appropriate action only by clear and convincing evidence." N.J.S.A. 9:17-43b.
*42 We need not recount the conflicting evidence that was presented at the bench trial. It is enough to know that it was largely testimonial and led the judge to comment that though the evidence favored plaintiffs' claim, "it can go either way" in view of plaintiffs' heavy burden of proof.[1]
The judge thereupon granted plaintiffs' motion for an order requiring that the parties and their mothers, who had both testified, submit to DNA "fingerprint" blood tests within 15 days.[2] Plaintiffs had made a preliminary showing that the results of such testing would establish whether the decedent was plaintiffs' father. Defendants do not now question whether the test results would be admissible in evidence. The court reserved consideration of that issue until the results are offered in evidence.
When plaintiffs' attorney reported that E.P. had refused to submit to the blood tests, the court declined to hold her in contempt or impose sanctions to coerce compliance. Instead, it ordered that unless E.P. submits, her testimony would be stricken. E.P. never submitted to the tests and never appeared in court to give a reason for her refusal.[3]
The court concluded in an oral opinion that, with one exception, none of the evidence bore directly on the paternity issue. *43 The exception was the testimony of plaintiffs' mother: "And the question is do I believe her, because if I believe her, then the evidence is clear and convincing." It arrived at its ultimate finding as follows:
There is a proposition in law that when a witness, who is expected to testify, does not testify or is not called by the party for whom that testimony would be beneficial, if they leave out someone you'd expect them to call, because they have a saying that says good then the inference can be drawn legally if they were called they would not be saying something good and that's why they were left alone and not called to testify, State against Clawans[, 38 N.J. 162, 183 A.2d 77 (1962)].
The opposite inference can be drawn, the inference that if called, the testimony would be unfavorable. I think that the same opinion is applicable to [E.P.] Her unexplained failure to take the test is an indication that she knew if she took the test it would be likely to come out unfavorable to her position that [plaintiffs] could not have been the children of [the decedent].
But when you sort it all out, you come back to [plaintiffs' mother]. I have to say do I believe her or don't believe her from all the circumstances, all of which in various ways seems to support her testimony that these four children were conceived by [the decedent]. I find that they were and I'm satisfied that they were by the evidence which now is clear and convincing and that evidence is that I believe [plaintiffs' mother].
The court's language on the point is not clear. It suggests that the court may have erroneously rested its paternity finding in part on an adverse inference it drew against defendants from E.P.'s refusal to submit to the blood tests.
There is no basis in Clawans for drawing an inference against defendants from the fact that one of their witnesses later chose to withhold evidence. The remedy lies against the witness, not against the parties who called her. As we said in State in the Interest of J.L.W., 236 N.J. Super. 336, 345, 565 A.2d 1106 (App.Div. 1989), "Clawans did not create the inference to which it refers; it simply recognized that a reasonable fact-finder at trial would generally expect a party to produce an available witness who could give significant unbiased testimony unless that party feared that the witness's testimony would be unfavorable." Here defendants produced the witness.
N.J.S.A. 9:17-51 deals in relevant part with blood and genetic testing as follows:

*44 a. The court may, and upon request of a party shall, require the child, mother, or alleged father to submit to blood tests or genetic tests. The tests shall be performed by a qualified expert appointed by the court.[[4]]
* * * * * * * *
d. The refusal to submit to blood tests or genetic tests, or both, may be admitted into evidence and shall give rise to the presumption that the results of the tests would have been unfavorable to the interests of the party refusing. Refusal to submit to blood tests or genetic tests, or both, is also subject to the sanctions within the jurisdiction of the court.
The adverse "presumption" is drawn against "the party refusing." Here no party refused to submit to the testing.
Thus the trial court erred, both at common law and under the Parentage Act, if it drew an inference adverse to defendants from a nonparty witness's refusal to submit to the tests. We must therefore remand the matter to permit the trial court to express in clear terms whether it drew the adverse inference and whether, considering all of the evidence, the blood tests are needed to establish that the decedent was plaintiffs' father.
A trial court is not helpless in dealing with a nonparty witness who refuses to submit to blood or genetic testing. Although the Parentage Act subjects only parties to a court order compelling such testing, a court has inherent power to order anyone within its jurisdiction to submit to such tests when they are needed to adjudicate a genuine issue before it. "It is well settled that a court possesses the inherent power to call witnesses on its own initiative in the quest for the truth." State v. Ross, 80 N.J. 239, 248, 403 A.2d 457 (1979). If a court has the inherent power to require a nonparty to give evidence in the form of testimony in the quest for the truth, it also has the inherent power to require a nonparty to give evidence in the form of a blood sample in the quest for the truth. See In re Fingerprinting of M.B., 125 N.J. Super. 115, 309 A.2d 3 (App. Div. 1973) (sustaining Law Division order that required eighth-grade *45 pupils to submit to fingerprinting as part of criminal investigation).
We recently recognized, however, that forcing a putative father to give a blood sample to adjudicate a paternity issue implicates his Fourth Amendment right to be free of unreasonable searches. S.S. v. E.S., 243 N.J. Super. 1, 578 A.2d 381 (App.Div. 1990). We held there that "the plaintiff should be required to show, as a prerequisite to court ordered blood tests, that there is an articulable reason for suspecting the defendant is the father." Id. at 12, 578 A.2d 381. The evidence in this record provides articulable reasons for ordering E.P. to submit to blood testing to determine whether the decedent was plaintiffs' father.
As we pointed out in S.S., "Refusal to comply with a court order falls within the judiciary's inherent contempt power." Id. at 8, 578 A.2d 381. Thus, in the event that E.P. persists in refusing to submit to blood testing, the court has the inherent power to hold her in contempt or to impose sanctions to coerce compliance, or both. R. 1:10. However, the court should not resort to punitive or coercive measures without first having determined that plaintiffs need the blood testing results to discharge their burden of proof and without first giving E.P. notice and an opportunity to be heard. Because E.P. was not a party to this appeal, our opinion does not bar her from having the trial judge reconsider whether there are articulable reasons for ordering blood testing.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] When it made this remark, the court had not yet received documentary evidence that strengthened plaintiffs' case. The decedent's military records corroborated plaintiffs' mother's testimony that he was in the vicinity of where she lived when plaintiffs were conceived. Hospital records tended to contradict the testimony of defendants and E.P. that for many years the decedent was not mentally competent to know whether plaintiffs were his children.
[2] The judge rejected the alternative of exhuming the decedent's body to obtain a tissue sample that could be compared with blood samples from plaintiffs and their mother. There was unchallenged evidence that the body was too decomposed to be useful for this purpose.
[3] Although E.P. did not formally appear in person or by counsel respecting the blood test order, defendants' attorney argued below, apparently on her behalf, that she should not be held in contempt of court for having disobeyed the order.
[4] The Parentage Act does not provide for blood and genetic testing of someone like E.P. who is not the mother of the children whose paternity is in question.