**Ashley ROSSA, a minor through her mother, Patricia ROSSA, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2001.

March 18, 2002.

Marc S. Jacobs, Philadelphia, for petitioner.

Jonathan F. Ball, Philadelphia, for respondent.

Before PELLEGRINI, J., FRIEDMAN, J., and NARICK, Senior Judge.

OPINION BY Senior Judge NARICK.[1]

Ashley Rossa (Claimant), a minor, appeals from an order of the Workers' Compensation Appeal Board (Board) that reversed the decision of a Workers' Compensation Judge (WCJ) that granted the fatal claim petition filed on Claimant's behalf by Patricia Rossa (Rossa), Claimant's mother, and arising from the death of Daniel R. Boyle (Decedent). We reverse.

On February 6, 1991, Decedent, a police officer for the City of Philadelphia (Employer), died as a result of a gunshot wound to the head, sustained in the course and scope of his employment. On March 17, 1992, Rossa filed the fatal claim petition on behalf of her daughter and the matter was assigned to WCJ Lundy, who placed the matter in indefinite postponement status to allow the parties the opportunity to file a paternity claim in the court of common pleas. However, on August 5, 1999, Claimant's counsel requested that the case be removed from inactive status and the matter was assigned to WCJ Bachman due to the illness of WCJ Lundy. Employer's counsel objected to the reactivation, but the objection was overruled and additional hearings were held.

Claimant presented the testimony of Rossa, Patricia J. Ranalli, Claimant's grandmother and Rossa's mother, Raymond Ranalli, Rossa's stepfather, Louis Rossa, Rossa's brother, and Ethel Weir, Rossa's grandmother. Employer presented the testimony of Thomas Patrick Boyle, Decedent's father, who was a police detective working for Employer. The WCJ summarized the testimony of the various witnesses and found that:

16. This WCJ ... finds from the testimony of Patricia Rossa and the other fact witnesses who testified on her behalf, that Ashley L. Rossa is the daughter of Decedent, Daniel Boyle. This WCJ finds [Rossa's] testimony credible that during the period she and Decedent dated, they had sexual relations. This WCJ finds [Rossa's] testimony credible that she dated Decedent up until March 17, 1990. This WCJ finds [Rossa's] testimony credible and convincing that during the period she and Decedent were dating and engaging in sexual relations,

1. This case was originally argued before a panel consisting of Judge Pellegrini, Judge Friedman and Senior Judge Rodgers. Because of the untimely death of Senior Judge Rodgers, the case was submitted to Senior Judge Narick as a member of the panel.

[Rossa] did not date other men. This WCJ finds consistency in [Rossa's] testimony and the testimony of the fact witnesses on her behalf and the actions [Rossa] and the fact witnesses undertook in their belief that Decedent was the father in this matter, specifically [Rossa] contacting Decedent in April 1990 informing him of the pregnancy; Raymond Ranalli engaging in discussion with Decedent regarding support; Patricia Ranalli's contacts with the Decedent during Ms. Rossa's pregnancy and the telephone contact with Decedent on the day of Ashley Rossa's birth, and [Rossa's] naming Decedent, upon Ashley Rossa's birth, on the Certificate of Birth, same Birth Certificate filed before Daniel Boyle's death.

(WCJ's decision, p. 7). The WCJ rejected the testimony of Thomas Boyle, Sr., Decedent's father to the extent it was inconsistent with the finding that Decedent was Claimant's father. Having so concluded, the WCJ granted the fatal claim petition.

Employer appealed to the Board, which vacated the WCJ's decision, based on a conclusion that the WCJ did not have jurisdiction to determine an issue of paternity. However, because the Board concluded that the WCJ did have authority to determine issues of dependency, it remanded the matter for findings in that regard. Following that order, dated December 14, 2000, Claimant filed a petition for rehearing, requesting that the Board modify its order as to the remand. Although the Claimant's petition was granted, the Board did not reach a different conclusion concerning the jurisdictional issue. Rather the Board determined that Claimant correctly argued and that Employer did not contest Claimant's request to eliminate dependency as an issue in the case. Thus, the Board modified its prior order deleting the portion of its order remanding the matter to the WCJ.[2]

Claimant now appeals to this Court,[3] and raises the following issues for our review: (1) whether the WCJ had jurisdiction to determine whether Claimant was entitled to benefits under Section 307 of the Workers' Compensation Act (Act),[4] (2) whether substantial evidence supports the WCJ's finding that Claimant is Decedent's daughter and (3) whether Claimant had to establish dependency in order for Claimant to receive benefits under Section 307 of the Act in light of Decedent's death on February 6, 1991.

We first address Claimant's argument that the WCJ has jurisdiction to determine whether Claimant is entitled to benefits under Section 307 of the Act, an issue of first impression in Pennsylvania. Claimant argues that workers' compensation judges have determined issues regarding children's rights of entitlement to benefits under the Act, whether the children are natural, posthumous, legitimate or illegitimate, citing *Hoffer Transportation Co. v.*

**2.** Because the Board eliminated the order to remand, any issues and argument by the parties to this appeal concerning whether the Board's order is appealable need not be addressed by this Court.

**3.** Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Ad-

ministrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth.436, 550 A.2d 1364 (1988).

**4.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 561 and 562. This section of the Act identifies who is entitled to death benefits and, specifically, provides that if there is no widow then compensation is to be paid to the decedent's child or children.

*Workmen's Compensation Appeal Board (Gaymon),* 66 Pa.Cmwlth.310, 443 A.2d 1381 (1982). Claimant also asserts that a workers' compensation judge's jurisdiction includes factual disputes concerning parenthood, common law marriages, and dependency, citing *Brandywine Paperboard Mills v. Workers' Compensation Appeal Board (Zittle),* 751 A.2d 1205 (Pa.Cmwlth. 2000). Relying on *Mohan v. Publicker Industries, Inc.,* 202 Pa.Super. 581, 198 A.2d 326 (1964), Claimant also contends that workers' compensation judges have determined the class of dependents based upon the date of death of a decedent, the factual circumstances regarding survivors at the date of death and any change in conditions after death, which may eliminate the entitlement of a member to a class and not permit payment of benefits to the next class. See also *McCusker v. Workmen's Compensation Appeal Board (Rushton Mining Co.),* 145 Pa.Cmwlth.261, 603 A.2d 238 (1991), *aff'd* 536 Pa. 380, 639 A.2d 776 (1994) (a WCJ determines whether a widow or widower is disqualified for benefits for being in a meretricious relationship); *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sadvary),* 524 Pa. 235, 570 A.2d 84 (1990) (a WCJ determines whether benefits should be reinstated because a meretricious relationship no longer exists). Claimant also relies on cases that decide whether children who are not actually children of the deceased are eligible for benefits where the decedent was in a position *in loco parentis. Hertz Corporation v. Workers' Compensation Appeal Board (Johnson),* 724 A.2d 395 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 559 Pa. 696, 739 A.2d 1060 (1999).

Claimant distinguishes *Gainer v. Jones,* 347 Pa.Super. 462, 500 A.2d 1148 (1985), a case relied upon by the Board and Employer, which dealt with a paternity action filed in the common pleas court. The issue of the court's jurisdiction arose in the *Gainer* case because no complaint in support had been filed prior to the trial court's order requiring blood testing. The court determined that this failure to file for support was not fatal to the paternity action. It discussed the jurisdiction of the trial court, indicating that the test of jurisdiction was the competency of the court to determine controversies of the general class of the case presented for its consideration, i.e., whether the court had power to enter upon the inquiry not whether it might ultimately decide that it was unable to grant the relief sought. Claimant contends that *Gainer* has nothing to do with a WCJ's jurisdiction under the Act and does not deal with a statute that is separate from the Judicial Code. See also Article 5, Section 5 of the Pa. Constitution that gives the common pleas courts jurisdiction "except as may be otherwise provided by law."

Claimant also distinguishes two cases relied upon by the Board that involved attorney fee disputes in workers' compensation cases.[5] Claimant contends that the *Pitt* cases have nothing to do with a lack of jurisdiction in the present matter. Those cases were decided on the basis that attorneys have a lack of interest in the benefits that are granted under the Act. In fact, Claimant contends that that distinction weighs in favor of allowing the WCJ to make a determination in this case, because this case does concern Claimant's interest in benefits granted under the Act.

---

5. *Larry Pitt and Associates v. Long,* 716 A.2d 695 (Pa.Cmwlth.1998); *Pitt v. WCAB (McEachin),* 161 Pa.Cmwlth.60, 636 A.2d 235 (1993), *appeal denied,* 538 Pa. 661, 648 A.2d 792 (1994).

Additionally, in the reply brief, Claimant sites numerous cases from other jurisdictions that have considered the issue of paternity in a workers' compensation context. The following cases cited by Claimant either conclude or support the conclusion that the workers' compensation authority has the power to determine paternity of an illegitimate child for the limited purpose of establishing entitlement to workers' compensation benefits: *Sassmen v. SAIF Corp.*, 72 Or.App. 145, 694 P.2d 998 (1985) (in response to the argument that only the circuit court had jurisdiction to decide paternity, the court held that a referee had jurisdiction to decide any question concerning a minor child's claim for workers' compensation benefits even without the establishment of paternity by a court); *Rios v. Industrial Commission*, 120 Ariz. 374, 586 P.2d 219 (1978) (Commission has jurisdiction to determine whether the claimant is the child of the decedent for the purpose of determining her entitlement to workers' compensation death benefits); *Bettelon v. Metalock Repair Service*, 137 Mich.App. 448, 358 N.W.2d 608 (1984), *appeal denied*, (April 23, 1985) (court held that although circuit court normally decides paternity the workers' compensation board could decide the issue in that forum); *Brown v. Ryder Truck Rental*, 300 S.C. 530, 389 S.E.2d 161 (1990) (court held that absent an express statutory restriction on the broad powers of the workers' compensation authorities, those authorities had jurisdiction to determine paternity); *Goins v. Lott*, 435 N.E.2d 1002 (Ind.Ct.App.1982) (where a determination of a child's paternity is a necessary incident to determine workers' compensation benefits, the board is em-powered to decide that question); *Carpenter v. Tony E. Hawley, Contractors*, 53 N.C.App. 715, 281 S.E.2d 783 (1981), *appeal denied*, 304 N.C. 587, 289 S.E.2d 564 (1981) (for the limited purpose of establishing who is entitled to benefits under the workers' compensation statute, the commission has the authority to make a determination as to the paternity of an illegitimate child); *R.L.J. v. Western Sprinklers, Inc.*, 17 Kan.App.2d 749, 844 P.2d 37 (1992), *appeal denied*, 252 Kan. 1093 (1993) (for purposes of workers' compensation benefits only, a workers' compensation judge or reviewing court may determine parentage).[6]

In response, Employer first argues that the legislature has not granted to the Department of Labor and Industry (Department), to the WCJ or to the Board the power to make paternity determinations, citing Sections 2208 and 2213 of The Administrative Code [7] that set forth the power invested in the Department and in workers' compensation judges. The Department's power is generally described as follows: "[t]o administer and enforce the laws of this Commonwealth .... relating to work[ers'] compensation and occupational disease compensation ...." and "[t]o receive and refer to [workers' compensation judges] all claims for compensation in contested or unpaid cases and to receive and refer to the [Board] all appeals from decisions of [workers' compensation judges] and to mail copies of decisions to all affected parties. ...." Section 2208 of The Administrative Code. Workers' compensation judges' power is designated as the duty "to hear and determine such

---

6. Claimant points out that the two cases cited by Employer that hold to the contrary apply the Uniform Parentage Act, which is not applicable in Pennsylvania. *See Taylor v. Morris*, 88 Wash.2d 586, 564 P.2d 795 (1977);

*Poole Truck Lines, Inc. v. Coates*, 833 S.W.2d 876 (Mo.Ct.App.1992).

7. Act of April 9, 1929, P.L. 177, 71 P.S. §§ 568 and 573.

claims for compensation as shall be assigned to him by the Secretary of Labor and Industry. . . . ." Section 2213 of The Administrative Code. Because these grants of power in The Administrative Code and Claimant's reliance to Section 307 of the Act do not make specific references to paternity determinations, Employer contends that such a determination is beyond the agency's jurisdiction, citing *inter alia Pennsylvania National Guard v. Workmen's Compensation Appeal Board*, 63 Pa. Cmwlth. 1, 437 A.2d 494 (1981), *rev'd on other grounds*, 510 Pa. 348, 508 A.2d 292 (1986) (administrative agency may only exercise powers which legislature has conferred by clear and unmistakable language).

Employer also contends that paternity determinations implicate substantial private interests and, therefore, require due process protections. *Corra v. Coll*, 305 Pa.Super. 179, 451 A.2d 480 (1982) (in a support action the court held that the impact of a determination of paternity on familial, liberty and property interests justifies the right to the appointment of counsel). Employer also relies on language in the *Corra* opinion, indicating that when paternity is established the finding is *res judicata* and can not be relitigated in a subsequent proceeding.

Employer further relies on Section 4343 of the Domestic Relations Code, 23 Pa. C.S. § 4343, which states in pertinent part that "[w]here paternity of a child born out of wedlock is disputed, the determination of paternity shall be made by the court in a civil action without a jury." Employer notes that this statute confers jurisdiction to the common pleas court in a support context, also giving the court the power to order the parties to submit to genetic testing. Employer also cites Pa. R.C.P. No.1910 that provides the procedure the parties follow when seeking

support, including situations in which paternity is at issue. Relying on both the Domestic Relations Code and the Rules of Civil Procedure, Employer contends that the legislature's intent was to place paternity decisions in a judicial forum, not in an administrative agency forum.

Additionally, Employer cites another section of the Domestic Relations Code that serves to legitimize children born out of wedlock. Section 5102 of the Domestic Relations Code, 23 Pa.C.S. § 5102, states that "[f]or the purpose of prescribing benefits to children born out of wedlock by, from and through the father, paternity shall be determined" either through marriage, the holding out that the child is the fathers or by "clear and convincing evidence that the man was the father of the child, which may include a prior court determination of paternity." Employer also quotes Section 2107 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 2107, which for purposes of descent provides for the determination of the identity of a father of a child born out of wedlock in the same manner prescribed in 23 Pa.C.S. § 5102.

Employer also notes that Section 5103(i) of the Domestic Relations Code, 23 Pa.C.S. § 5103(i), which was added by amendment in 1993, concerns the inclusion of the father's name on the birth certificate of a child of unmarried parents only when both father and mother sign a voluntary acknowledgment of paternity or when "[a] court or *administrative agency* of competent jurisdiction has issued an adjudication of paternity." (Emphasis added.) Because the Department, the administrative agency here, is in Employer's terms not specifically empowered by the legislature, it is not one of the agencies that is competent to make the paternity determination called for in this section of the Domestic Relations Code.

Employer also points out that a WCJ does not have the authority to order genetic testing and, therefore, cannot make an accurate determination as can the court of common pleas. Lastly, Employer discusses the Pennsylvania cases relied on by Claimant, contending that they are inapposite because none involve the issue of paternity. Employer also asserts that jurisdiction to decide cases involving dependency, *in loco parentis* status, common law marriage and meretricious relationship issues does not confer jurisdiction on the WCJ to determine paternity. In support of this assertion, Employer cites *Hippensteel v. Workmen's Compensation Appeal Board (H.M. Kelly Trucking Co.)*, 72 Pa.Cmwlth.261, 457 A.2d 137 (1983), a case in which the court held that a petition for death benefits for a minor child born out of wedlock was untimely. The *Hippensteel* opinion noted that the child was the illegitimate daughter of the decedent, who had been obligated to pay support pursuant to a court order. Based on this statement Employer believes that *Hippensteel* supports its position in the present matter.

■ Initially, we note that no Pennsylvania case law cited by either party has decided the issue presently before this court, particularly, where support and/or inheritance had not been previously sought nor would be sought in the future. We appreciate the fact that common pleas courts have generally determined paternity in the context of support and for purposes of descent. However, we recognize that workers' compensation judges have often been called upon to make decisions concerning a variety of familial relationships with regard to entitlement to compensation benefits.

Neither party cited *Wydra v. Philadelphia & Reading Coal & Iron Co.*, 153 Pa.Super. 529, 34 A.2d 326 (1943), *alloc.*

*denied by writ*, a workers' compensation case concerning children born out of wedlock that were legitimized by the subsequent marriage of their parents. Although in *Wydra* the paternity issue was not raised, the court held that the workers' compensation authority as the fact finder credited testimony proving that a common law marriage took place and thereby legitimated the children. The court acknowledged that since sufficient competent evidence supported these findings, these findings could not be contravened. We believe this dispute like the one at issue before us is of the type contemplated by Sections 2208 and 2213 of The Administrative Code, cited by Employer. The result in *Wydra* determined entitlement to compensation benefits under the Act, a power encompassed in the authority invested in the Department. The result here will accomplish the same purpose.

Also in *Hippensteel*, a workers' compensation case relied upon by Employer, the opinion only notes that a support obligation was in place pursuant to a court order. The *Hippensteel* court relied on that finding to the extent that it supported its conclusion that there was no excuse for the untimely filing for compensation benefits. Furthermore, in *Lehigh Foundations, Inc. v. Workmen's Compensation Appeal Board*, 39 Pa.Cmwlth. 416, 395 A.2d 576 (1978), the court held that illegitimate children were to be treated the same as legitimate children of a deceased employee and refused to relegate these children to a less favorable position that would require them to meet additional criteria. Again the question of paternity was not at issue, but no court order requiring support had been in effect either.

We also recognize that no statutory language compels a particular result in the present matter. Both the Domestic Rela-

tions Code and the Probate, Estates and Fiduciaries Code relied on by Employer make provisions that set forth the manner in which children born out of wedlock can be declared legitimate, however, none of the provision restrict the jurisdiction to determine paternity solely to the common pleas court. In fact Section 5103(i) of the Domestic Relations Code, discussed above, contemplates an administrative agency's power to issue an adjudication of paternity and Employer cites nothing that eliminates the Department as one of the administrative agencies competent to make this determination.

Although Employer argues that the Department has not been specifically empowered to determine paternity by the legislature, we also recognize that no restriction on the WCJ's power to make this determination can be found. Furthermore, we believe this argument is belied by Pennsylvania case law cited above in which factual decisions were made concerning survivors and their relationship to the descendent at the time of his or her death. We are persuaded by the reasoning contained in these prior decisions and in addition find enlightening the case law from other jurisdictions where the specific issue of jurisdiction of workers' compensation authorities to determine paternity was squarely before the courts. We, therefore, hold that the WCJ has jurisdiction to determine paternity as it relates to entitlement to benefits within the workers' compensation context. This conclusion, so long as it rests on findings based on substantial evidence in the record, is in no way different than other family relationship questions decided by a WCJ.[8]

■ Claimant next contends that if this Court determines that the WCJ has jurisdiction to decide this matter, substantial evidence was presented to support the WCJ's findings. Having reviewed the record, we conclude that the WCJ's findings are supported by the requisite evidence. Employer, however, contends that paternity must be established by clear and convincing evidence, citing *Williams v. Milliken*, 351 Pa.Super. 567, 506 A.2d 918 (1986), and that here the WCJ did not apply that standard. The *Williams* case and others cases cited by Employer sought relief before a common pleas court in the context of custody or support litigation. None involved the request for benefits under the Act, which applies the substantial evidence standard.

■ Employer also contends that the WCJ improperly relied on the birth certificate and the application for welfare support, asserting that they are self-serving documents filed by Rossa. Employer did not object to the admissibility of this evidence at the time it was submitted and can not now object to its admissibility. Moreover, Employer's argument is actually an objection to the credibility and weight of the evidence, which is within the province of the WCJ who is free to accept or reject it. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995).

■ Claimant's third argument addresses whether dependency must be established in order for benefits to be awarded. Since the class and amount of benefits are established at the time of Decedent's death, *Mohan*, we look to the Act as it was at that time. Although the 1993 amendments have been interpreted to require

---

**8.** We recognize that with DNA testing a court may have more definitive evidence before it. However, prior to the advent of DNA testing, trial courts arrived at paternity decisions based on evidence similar to that presented in this case. The availability of DNA testing alone should not deprive a WCJ of jurisdiction.

that a decedent's children must reside with him or her at the time of death, *Hertz,* that was not the law previously. Illegitimate children could qualify for benefits even though they were neither members of the decedent's household nor supported by the decedent. *See Hoffer* (pursuant to its interpretation of Section 307 of the Act, the court held that the status of an illegitimate child's eligibility for benefits rested solely on whether he or she was under 18 years of age or a full-time student without more). Thus, we conclude that at the time Decedent died the establishment of dependency was not a requirement in order for a child to receive benefits.

Accordingly, for the reasons stated above, we reverse the Board's order and reinstate the WCJ's decision.

### ORDER

NOW, *March 18, 2002,* the order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed.

### CONCURRING OPINION BY JUDGE PELLEGRINI.

I concur in the result reached by the majority that a Workers' Compensation Judge (WCJ) has the authority to determine the paternity of a child. I write separately because I believe that if one of the parties requests DNA testing of a party or non-party to determine paternity, the WCJ has the authority to so order.

In this case, Daniel R. Boyle (Decedent) was killed in the course and scope of his employment. Patricia Rossa (Rossa), who alleged Decedent was her former lover, filed a fatal claim petition on behalf of her daughter, Ashley Rossa (Claimant), whom she claimed was the product of her relationship with the Decedent. In 1995, the WCJ indefinitely postponed the case to allow the parties the opportunity to file a paternity claim in the trial court because

paternity had not been established prior to Decedent's death. However, in 1999, Claimant's counsel requested the case be removed from the inactive status even though paternity was never determined. While Rossa requested that Decedent's father submit to DNA testing, she never requested that the WCJ order him to undergo such a test. Rossa and multiple family members provided testimony before the WCJ that Claimant was Decedent's daughter. Decedent's father testified to the contrary and prior to the hearing, refused Rossa's request to submit to DNA testing. Finding Rossa and her family's testimony credible, the WCJ granted the fatal claim petition and the City of Philadelphia, Decedent's employer, appealed to the Board. The Board vacated the WCJ's decision after concluding that the WCJ did not have jurisdiction to determine an issue of paternity and Claimant filed an appeal with this Court.

The majority agrees with Claimant that the WCJ has jurisdiction to determine issues of paternity and reverses the Board. It does so stating that 1) there is no restriction on the WCJ's power to make such a determination, 2) under Pennsylvania case law, WCJs have previously made determinations regarding survivors and their relationship to the decedent at the time of death, and 3) other jurisdictions hold the workers' compensation authority has the power to determine paternity of an illegitimate child for the limited purpose of establishing entitlement to workers' compensation benefits. While I agree with the majority that the WCJ has jurisdiction to determine issues of paternity, I write separately because if DNA testing has been requested by one of the parties, the WCJ has the authority to order a party to the action or even a non-party, as here, to submit to such testing to aid in determining paternity. If not requested, then con-

clusive evidence may not be available to the WCJ to determine paternity.

In *Strayer v. Ryan*, 725 A.2d 785 (Pa.Super.1999), the Superior Court, noting that DNA paternity testing had pinpoint accuracy, held that DNA testing was proper where a father wanted to prove his paternity so as to engage in a relationship with the child and the facts did not give rise to any countervailing presumption of paternity, DNA testing to establish paternity should be ordered. Additionally, in *Wawrykow v. Simonich*, 438 Pa.Super. 340, 652 A.2d 843 (1994), the Superior Court found there was reasonable cause for exhumation that was sought for purposes of DNA testing to determine the paternity of a child on whose behalf a claim was made against the decedent's estate.

Because of the relative newness of DNA testing, we have never addressed whether a WCJ can order DNA testing either by requiring a relative of the deceased to submit to DNA testing or exhuming the body to obtain the requisite DNA sample for comparison under Section 437 of the Workers' Compensation Act (Act),[1] which gives the WCJ the power to subpoena the "attendance of witnesses." Whether the power to subpoena the "attendance of witnesses" in the workers' compensation arena includes requesting a party to submit to DNA testing has not yet been decided in Pennsylvania.[2] However, at least one other state has addressed that issue and has determined that a trial court has the power to require a non-party to submit to DNA testing. In *Estate of Peter Rogers, Sr., Deceased*, 245 N.J.Super. 39, 583 A.2d 782, 784 (1990), the Court held that based on the power of a court to order the attendance of witnesses, it could order a non-party to provide a DNA sample, stating:

> A trial court is not helpless in dealing with a nonparty witness who refuses to submit to blood or genetic testing. Although the Parentage Act [as in Pennsylvania] subjects only parties to a court order compelling such testing, a court has inherent power to order anyone within its jurisdiction to submit to such tests when they are needed to adjudicate a genuine issue before it. "It is well settled that a court possesses the inherent power to call witnesses on its

**1.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 992. That section provides:

> The secretary, any referee, and any member of the board shall have the power to issue subpoenas to require the *attendance of witnesses* and/or the production of books, documents, and paper pertinent to any hearing. Any witness who refuses to obey such summons or subpoenas, or who refuses to be sworn or affirmed to testify, or who is guilty of any contempt after notice to appear, may be punished as for contempt of court, and, for this purpose, *an application may be made to any court of common pleas within whose territorial jurisdiction the offense was committed, for which purpose such court is hereby given jurisdiction.* (Emphasis added.)

**2.** While Pennsylvania does allow a trial court to order DNA testing upon the request of any party to a civil or criminal action or upon its own initiative pursuant to 23 Pa.C.S. § 5104(c), that statute does not address the issue of a non-party. 23 Pa.C.S. § 5103(c) provides:

> In any matter subject to this section in which paternity, parentage or identity of a child is a relevant fact, the court, upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to the tests, the court may resolve the question of paternity, parentage or identity of a child against the party or enforce its order if the rights of others and the interests of justice so require.

own initiative in the quest for truth." (Citations omitted.) If a court has the inherent power to require a nonparty to give evidence in the form of testimony in the quest for the truth, it also has the inherent power to require a nonparty to give evidence in the form of a blood sample in the quest for the truth.

Based on the reasoning in *Rogers*, I believe the authority contained in 77 P.S. § 992 to compel the attendance of witnesses provides the WCJ with the authority to order DNA testing of either a party or non-party to the proceeding.

Because the employer failed to ask a non-party to submit to DNA testing, the only evidence the WCJ could rely upon was the testimony provided, including the non-party evidence presented by Decedent's father. Because that testimony constituted substantial evidence, the WCJ did not err in making a determination as to the paternity of Rossa's child. Because we are constrained to rely solely on the testimony presented, I concur in the result.

## CONCURRING OPINION BY JUDGE FRIEDMAN.

I concur in the result reached by the majority. However, I write separately to present a different legal analysis of the question before us here, i.e., whether a workers' compensation judge (WCJ) has jurisdiction to determine the question of paternity in deciding if a minor child is entitled to benefits under section 307 of the Workers' Compensation Act [1] (Act).

### I. Jurisdiction

#### A. DPW and Paternity

The City of Philadelphia (Employer) argues in its brief that the courts of common pleas have *exclusive* jurisdiction to determine paternity. (Employer's brief at 27.) However, this argument completely ignores the explicit statutory authority of the Department of Public Welfare (DPW) to determine paternity.

DPW is the state agency responsible for developing and implementing a state plan for child support in accordance with Title IV–D of the Social Security Act. Section 4372 of the Domestic Relations Code, 23 Pa.C.S. § 4372. In this role, DPW is required to make available "paternity determination services" and to establish the paternity of children to whom DPW has provided cash assistance, medical assistance or other services authorized by the Public Welfare Code. Sections 4371, 4373(b)(1) and 4373(b)(5) of the Domestic Relations Code, 23 Pa.C.S. §§ 4371, 4373(b)(1), 4373(b)(5).

In order to expedite the establishment and enforcement of support on behalf of any assistance recipient or non-recipient receiving Title IV D services, DPW may issue an administrative order requiring "any individual to submit to genetic testing for the purpose of paternity establishment." Section 4377(a)(1) of the Domestic Relations Code, 23 Pa.C.S. § 4377(a)(1). Moreover, DPW "may administratively assess a civil penalty of up to $5,000 per violation upon any person ... that fails to comply with [such] an order. ...." Section 4377(b) of the Domestic Relations Code, 23 Pa.C.S. § 4377(b). Finally, DPW "may make application to any court of common pleas or to the Commonwealth Court for purposes of enforcing any ... final administrative order." *Id.*

The legislature granted DPW these explicit statutory powers pursuant to section 10 of Act 58 (Act 58), Act of December 16, 1997, P.L. 549. In section 11 of Act 58, the legislature then added subsection (i) to

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 562.

section 5103 of the Domestic Relations Code. Subsection (i) states, in pertinent part, that the name of the father of a child shall be included on the record of birth of a child of unmarried parents if a "court or *administrative agency* of competent jurisdiction has issued an adjudication of paternity." Section 5103(i) of the Domestic Relations Code, 23 Pa.C.S. § 5103(i) (emphasis added).

Based on the foregoing, it is abundantly clear that the courts of common pleas do *not* have exclusive jurisdiction to determine paternity. Therefore, Employer's argument must fail.

### B. Workers' Compensation and Paternity

The legislature has not enacted a statutory provision explicitly giving a WCJ the power to determine paternity. However, the legislature has given a WCJ the power to hear and determine "claims for compensation." Section 2213 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 573.

In giving a WCJ power to determine the ultimate issue of entitlement to benefits, the legislature certainly intended to give a WCJ the power to determine every relevant sub-issue. The fact that the workers' compensation statute does not contain a specific provision giving a WCJ the power to decide a particular sub-issue, like paternity, does not mean that a WCJ lacks the power to decide the sub-issue. Such an interpretation of the statute would lead to an absurd result, making it impossible for a WCJ to execute the statutory duty to determine all claims for compensation. *See* section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1) (stating that, in ascertaining the intention of the General Assembly in the enactment of a statute, we presume that the General Assembly does not intend a result that is absurd or impossible of execution).

As to the question of paternity, section 307 of the Act provides that compensation is payable to "any child" under the age of eighteen. 77 P.S. § 562. This court has held that the phrase "any child" in section 307 embraces "illegitimate children."[2] *Lehigh Foundations, Inc. v. Workmen's Compensation Appeal Board*, 39 Pa. Cmwlth. 416, 395 A.2d 576, 580 (1978). In so holding, this court specifically stated that, in some workers' compensation proceedings, "illegitimate children" are required to prove paternity. *Id.* at 578 (citing *Cairgle v. American Radiator & Standard Sanitary Corp.*, 366 Pa. 249, 77 A.2d 439 (1951)).

In *Cairgle*, a widow attempted to prove that her three minor children were entitled to workers' compensation benefits after the death of her husband in 1948. However, the widow had been separated from her husband since 1932, and her three minor children were born in 1939, 1942 and 1943. The issue was whether James Cairgle, the deceased employee, was the father of the widow's three minor children. The widow testified that, although she had been living with another man since 1936, she had had sexual intercourse with her husband from time to time. The referee did not believe the widow's testimony and concluded that Cairgle was *not the father* of the widow's three minor children. Thus, the referee concluded that the children were not entitled to benefits. Our supreme court ultimately affirmed the decision; although the

---

**2.** I place the phrase "illegitimate children" in quotes because, under section 5102(a) of the Domestic Relations Code, all children "shall be legitimate irrespective of the marital status of their parents, and, in every case where children are born out of wedlock, they shall enjoy all the rights and privileges as if they had been born during the wedlock of their parents. . . . ." 23 Pa.C.S. § 5102(a).

court could have questioned the referee's jurisdiction *sua sponte*, the court did *not* hold that the referee lacked jurisdiction to decide the paternity issue.[3]

Based on the above statutory provisions and case law, I would hold that, where the issue of paternity is essential to a determination of whether a child is entitled to workers' compensation benefits under the Act, a WCJ has jurisdiction to decide the question.

## II. Burden of Proof

Employer argues that, even if a WCJ has jurisdiction to determine paternity, the WCJ in this case failed to apply the correct burden of proof. (Employer's brief at 32.) Employer contends that the WCJ applied a preponderance of the evidence standard, but the proper burden of proof is clear and convincing evidence.[4] (Employer's brief at 35.)

The majority states that the WCJ properly applied the "substantial evidence" standard. (Majority op. at 13.) However, substantial evidence is *not* a burden of proof; rather, substantial evidence is the quantity of probative, credible and competent evidence that is sufficient to meet a particular burden of proof. Because the majority fails to discuss the proper burden of proof for a paternity question in workers' compensation proceedings, I cannot accept the majority's analysis of this issue.

The United States Supreme Court has explained the function of a burden of proof as follows:

> The function of a [burden] of proof ... in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

*Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (citation omitted). Different types of cases require different burdens of proof to satisfy the needs of due process. *Id.* In a typical civil case involving a monetary dispute between private parties, where the litigants share the risk of error in roughly equal fashion, the plaintiff's burden of proof is a mere preponderance of the evidence. *Id.* In a criminal case, where the interests of the defendant are much greater, our society imposes almost the entire risk of error upon itself, requiring proof beyond a reasonable doubt. *Id.* In cases involving individual interests that are more substantial than mere loss of money, such as reputation or parental rights, an intermediate standard of clear and convincing evidence is used. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).[5]

Here, Employer and Ashley Rossa (Claimant), a minor through her mother, Patricia Rossa (Rossa), are involved in a dispute over Claimant's entitlement to workers' compensation benefits. The resolution of the question rests on whether Daniel R. Boyle, a police officer who died in the course and scope of his employment,

---

3. A court may, at any time, raise the issue of an agency's jurisdiction *sua sponte. Riedel v. Human Relations Commission,* 559 Pa. 34, 739 A.2d 121 (1999).

4. Employer requests a remand so that a WCJ can consider the evidence using the clear and convincing evidence standard. (Employer's brief at 36.)

5. *See K.J. v. Department of Public Welfare,* 767 A.2d 609 (Pa.Cmwlth.2001) (J. Friedman, dissenting), *appeal denied,* —— Pa. ——, 788 A.2d 381, (No. 303 MAL 2001, 2001 WL 1203054, filed October 11, 2001).

was Claimant's father. Employer's interest in this matter is not more substantial than the mere loss of money. Moreover, although Boyle is deceased, the risk of an erroneous determination of paternity is minimized by either party's ability to seek exhumation of Boyle's body for genetic testing [6] or to request that Boyle's father undergo genetic testing.[7] Therefore, the proper burden of proof in this case is the preponderance of the evidence standard.[8]

Here, Claimant presented the credible testimony of various witnesses to show that Boyle was Claimant's father.[9] The fact that Claimant did not present better evidence goes only to the weight of the evidence presented, but, certainly, Claimant's evidence constitutes substantial evidence to support the WCJ's finding of paternity. Employer had the opportunity to present rebuttal evidence, including evidence derived from genetic testing. Although Boyle's father refused to undergo DNA testing, Employer could have sought the exhumation of Boyle's body for such testing. However, because Employer failed to do so, Employer cannot now com-

6. A court may order exhumation of a body where there is "reasonable cause" for it. *Wawrykow v. Simonich*, 438 Pa.Super. 340, 652 A.2d 843 (1994). A person seeking exhumation for DNA testing to establish paternity may satisfy this "reasonable cause" criterion by presenting credible testimony or other evidence relating to the paternity issue. *Id.* Once "reasonable cause" is established, the person then must show that, despite the passage of years, blood or tissue samples would be available for testing. *Id.*

I note that, in *Carroll v. Willow Brook Co.*, 108 Pa.Super. 580, 165 A. 550 (1933), a widow sought workers' compensation for herself and her minor daughter following the death of her husband. The question was whether her husband died in the course and scope of his employment. However, the widow objected to exhumation of her husband's body for a complete autopsy. Because the deputy coroner could only speculate about the cause of death without a complete autopsy, the referee was unable to conclude that the widow's husband died in the course and scope of his employment. Presumably, if the widow had not objected to exhumation of the body, the referee would have ordered it.

7. *See Wawrykow* (stating that the appellant sought DNA blood grouping samples from the decedent or his parents). Although Boyle's father refused to undergo genetic testing in this case, we cannot ignore the fact that the availability of DNA tests greatly reduces the risk of error in cases with paternity issues. In the opinion of some experts, DNA blood grouping tests can show a 99.99 percent probability of paternity. *Id.* (citing *Smith v. Shaffer*, 511 Pa. 421, 515 A.2d 527 (1986)).

8. Employer's assertion that the clear and convincing evidence standard *always* must apply to determinations of paternity is clearly mistaken. Where the paternity of a child born out of wedlock is disputed in a child support matter, the court makes the determination of paternity in a civil action without a jury, and the burden of proof is by a preponderance of the evidence. Section 4343(a) of the Domestic Relations Code, 23 Pa.C.S. § 4343(a); *see Minnich v. Rivera*, 509 Pa. 588, 506 A.2d 879 (1986) (upholding the preponderance of the evidence standard).

In its brief, Employer cites *Williams v. Milliken*, 351 Pa.Super. 567, 506 A.2d 918 (1986), where a man attempted to prove that he was the natural father of two children. The court held that his burden of proof was clear and convincing evidence. However, in *Williams*, the man had to rebut a presumption of legitimacy, meaning that the mother was married to another man when the children were born. It was this special circumstance that necessitated a higher burden of proof than preponderance of the evidence.

9. Rossa, Claimant's mother, testified that: (1) she dated Boyle from May 1989 to March 17, 1990; (2) while dating Boyle, she did not date other men; and, (3) while dating Boyle, the two engaged in sexual relations. Claimant was born on December 13, 1990. Other witnesses testified that Rossa contacted Boyle in April 1990 to inform Boyle of her pregnancy and that she continued to have contact with Boyle until Claimant's birth. Rossa's stepfather testified that he and Boyle discussed the matter of child support for Claimant.

plain about the WCJ's credibility determination and paternity finding.[10]

For all of the foregoing reasons, I would reverse the decision of the Workers' Compensation Appeal Board and reinstate the WCJ's decision.

---

**10.** As a final note, Employer argues that it would not be fair to allow a WCJ to determine paternity because the WCJ's determination would be res judicata and because neither the putative father nor his personal representative would be a party to the proceeding. (Employer's brief at 30.) Without addressing whether the WCJ's determination would be res judicata, I point out that Employer does not have standing to raise a res judicata argument on behalf of a putative father or his personal representative.