George B. COX, General Contractor, and Great American Insurance Company, Petitioners,

v.

STATE INDUSTRIAL COURT, Beatrice Clara Byars and Harrison Tony Byars, Respondents.

No. 41041.

Supreme Court of Oklahoma.

Nov. 24, 1964.

Rehearing Denied Dec. 22, 1964.

Kerr, Lambert, Roberts & Lewis, by
Harvey J. Lambert, Ada, for petitioners.

I. Jake Blevins, Ada, Charles R. Nesbitt,
Atty. Gen., Oklahoma City, for respondents.

HALLEY, Vice Chief Justice.

On September 19, 1963, Sweeney Winson
Byars, while in the employment of George
B. Cox, General Contractor, sustained an
accidental injury resulting in his death.
October 8, 1963, Beatrice Clara Byars filed
a claim for compensation before the State
Industrial Court under the death benefit
provisions of the Workmen's Compensation
Act alleging that she was the wife of de-
ceased, and that Harrison Tony Byars, age
4, Eunice Marlene Byars, age 2, and Kelly
Meely Byars, age 14 months, were the
children of deceased; that she and the
named children were dependent heirs at
law of deceased and entitled to the bene-
fits. On November 12, 1963, an order from
the County Court of Pontotoc County ap-
pointing Beatrice Clara Byars, administra-
trix of the estate of Sweeney Winson
Byars, deceased, was filed with the Indus-
trial Court.

On December 4, 1963, the cause was set
for hearing before a trial judge. At that
time it was determined that deceased had
two adult children by a prior marriage
who had not been notified of the action.
The judge granted a continuance to De-
cember 19, 1963, and ordered the proper
notice given the two adult children.

On the date set a finding was made that
notice had been given the two adult chil-
dren, that they had not appeared, and the
only question for the determination of the
Industrial Court was who were the depend-
ent heirs, if any, of deceased. The parties
introduced their evidence and the case stood
submitted.

On January 9, 1964, Beatrice Clara Byars
submitted a brief to the trial judge on
the merits of the case admitting that her
alleged common-law marriage to the de-
ceased was void for the reason the deceased
had a prior wife that he had not divorced
but urged that the three minor children
were entitled to the benefits. On January
17, 1964, George B. Cox, General Contrac-

tor, and his insurance carrier, Great American Insurance Company, filed their reply brief. On February 21, 1964, Beatrice Clara Byars filed a motion before the lower court begging leave to present newly discovered evidence and on March 16, 1964, the trial judge heard additional testimony. On March 26, 1964, the trial judge entered an order making the usual findings as to employment and accidental injury resulting in deceased's death, and further found that "the relationship between Beatrice Clara Byars and Sweeney Winson Byars, deceased was metriculous (meretricious) rather than matrimonial and that Beatrice Clara Byars is not an heir at law of Sweeney Winson Byars, deceased," found that Harrison Tony Byars, Eunice Marlene Byars and Kelly Meely Byars were not heirs of deceased and that none of the above named were dependents of the deceased and denied the claim.

On May 6, 1964, the Industrial Court, sitting en banc, vacated that part of the trial judge's order pertaining to dependency and found that Harrison Tony Byars was a dependent heir of deceased and ordered the employer or his insurance carrier to pay to the duly appointed guardian of Harrison Tony Byars the sum of $13,500.00. In all other respects the order of the trial judge was affirmed.

Employer and his insurance carrier, hereinafter referred to as petitioners, bring this original proceeding for a review of the lower court's order and for reversal contend that the finding that Harrison Tony Byars was a dependent heir of deceased is contrary to law and not supported by the evidence.

Harrison Tony Byars will be referred to as claimant and Beatrice Clara Byars will be referred to as Beatrice.

Beatrice testified that she was the mother of four children, the three above named and an eight year old boy named George Clark Mouse, the illegitimate son of one Cherokee Bill Mouse whom she lived with a part of 1954 and 1955; that in September of 1958 she and deceased began living together as man and wife and that this relation continued until March of 1961, when they separated; that the first above named children were the children of deceased; that deceased supported her and the children during that time; that since the separation in 1961, deceased would come around occasionally and "off and on he has given us either money or clothing for the children"; that she had never been "married" to any person other than to deceased; that to her knowledge deceased had been married twice before their relationship, had divorced one of his former wives, but that she didn't know what happened to the other wife.

On cross-examination, Beatrice testified that George Clark Mouse was born March 20, 1955, Harrison Tony Byars, claimant, was born April 9, 1959, Eunice Marlene Byars on May 5, 1961, and Kelly Meely Byars on July 17, 1962. She testified that in 1961 she applied for welfare benefits as Beatrice Clara Mouse and drew benefits under that name from that time to the present; that when she applied for such benefits she filed charges against both Mouse and the deceased for failure to support the children and that deceased was under the charge at the time of his death.

William D. Kennedy testified at the time of deceased's death deceased was living in a small house which he rented from witness; that he had never seen deceased's family but that deceased talked about having three children, two boys and a girl.

Marie S. Harris testified by deposition that she was an employee of the Department of Public Welfare of the State of Oklahoma stationed at Sulphur; that on the 6th day of February, 1961, she took an application of the deceased for surplus food commodities and that deceased listed Beatrice, claimant, and George Mouse as dependents, and claimant as his son; that deceased was certified as eligible for surplus foods on that date. The application was introduced into evidence.

Cleo Long testified by deposition that she was a former employee of Dunn Funeral Home at Sulphur and that she wrote burial insurance policies while so employed; that

on December 28, 1959, deceased made application for burial insurance listing Beatrice, claimant, and George Mouse as "members of a family who lived at the same home and that they are my dependents" and referred to claimant as his son. The application and certificate of burial insurance were introduced into evidence.

Both parties admit that the law governing the proposition of whether claimant is an heir of deceased is the interpretation by this Court of 10 O.S.1961 § 55, and 84 O.S.1961 § 215.

10 O.S.1961 § 55, provides:

"The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The status thus created is that of a child adopted by regular procedure of court. * * *"

The evidence is undisputed that deceased and Beatrice lived together as man and wife from September, 1958 until March 4, 1961. Claimant was born April 9, 1959. The evidence is undisputed that the deceased furnished claimant a home and lived with and supported him until the separation in March of 1961. It is undisputed that on December 28, 1959, when deceased made his application for burial insurance he acknowledged in writing, signed in the presence of a competent witness, that he was the father of claimant. The evidence is undisputed that on February 6, 1961, when deceased made application for surplus food commodities he acknowledged in writing, signed in the presence of a competent witness that he was the father of claimant.

84 O.S.1961 § 215, states:

"Every illegitimate child is an heir of the person who in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child; * * *."

Petitioners contended, Beatrice admitted, and the Industrial Court found that she was not the wife, common law, ceremonial or otherwise, of deceased. The evidence is undisputed that claimant is the child of the deceased. Therefore claimant is the illegitimate child of deceased.

Petitioners urge that claimant cannot be the illegitimate son of deceased because Beatrice was actually the common-law wife of Cherokee Bill Mouse and that Mouse and Beatrice had not been divorced, therefore under the rule in the case of Hunter v. Hunter, 206 Okl. 573, 244 P.2d 1140, all four of Beatrice's children are the legitimate children of Cherokee Bill Mouse.

With this argument we do not agree. In the Hunter case, supra, the facts were that one Marie Osborne, whose maiden name was Steiley, was married in 1912 to John Osborne and in 1921, the parties separated but neither obtained a divorce; in the Spring of 1923 she began living as man and wife with one John Hunter and they lived together as such until Joseph Hunter, the plaintiff in that case, was born on February 14, 1924; the doctor who attended the birth testified that at that time Marie Osborne told him the father of the child was her husband, John Osborne, that the child was legitimate and that she made no mention of John Hunter. The birth certificate of plaintiff bore the name of John Osborne as father. In 1929 Marie Osborne brought bastardy proceedings against John Hunter and in that case Marie Osborne testified, and other witnesses testified in her behalf and no mention was ever made of an attempted common-law marriage. On the contrary, she testified that John Hunter told her before she had sexual intercourse with him that he had a wife whom he had not divorced and could not marry her. John Hunter was found not guilty.

John Hunter died on June 3, 1940. He left a will giving his estate to his surviving widow and two sons. Plaintiff filed proceedings in the county court in 1941 to have himself declared an heir. He lost

on appeal to the district court. In affirming the judgment of the lower court in that case we held that the judgment of the lower court finding there was no marriage between John Hunter and Marie Osborne was amply supported by the evidence. We also held the fact that John Hunter lived with Marie Osborne before and after the birth of Joseph Hunter was not in itself an acknowledgment that the child was his as contemplated by 10 O.S.1961 (then 1941) § 55, and was not sufficient to invoke the rule laid down in Lawson et al. v. Benson, 200 Okl. 234, 192 P.2d 662; Jones v. Snyder, 121 Okl. 254, 249 P. 313. In In re Buffington's Estate, 169 Okl. 487, 38 P.2d 22, we held that where a father of an illegitimate child publicly acknowledges it as his own, receives it as such, with the consent of his wife, if he is married, into his family and otherwise treats it as if it were a legitimate child, he adopts it as such, and such child is therefore deemed legitimate from the time of its birth and its status is that of a child adopted by regular proceeding of a court.

We held the rule was not applicable in the Hunter case, supra, because the paternity of the child was never acknowledged in writing or publicly. We said:

"While there is some evidence that he acknowledged to certain individuals that he was the father of the child, yet he never did so publicly. Also the appellant's mother, and others, gave evidence of such public acknowledgment, and acceptance into her home while deceased purportedly lived with her in the alleged common-law marital relationship but such evidence, if true, was insufficient under Section 55 O.S.A. Title 10, supra, and also this evidence, if material, was evidently discredited by the trial court because of their prior contradictory statements in the prior bastardy trials wherein the deceased was charged as being the father of appellant for the purpose of charging him with the responsibility of the child's support, but for which he was found not guilty."

The Hunter case and the case at bar are not analogous. Here there has been no previous adjudication by any court that the deceased was not the father of claimant; there has been no adjudication that Beatrice was the common-law wife of Cherokee Bill Mouse; there have been no contradictory statements made about the paternity of claimant as was made in the Hunter case. In the instant case the only testimony as to the paternity of claimant was that of Beatrice that deceased was the father of claimant and this was corroborated by the twice written public acknowledgments by deceased, before competent witnesses, that claimant was his son.

■ We hold there is ample evidence to support the finding by the Industrial Court that claimant was an heir at law of deceased.

The evidence is undisputed that deceased supported claimant from the time of his birth until March of 1961, and partially supported him up until the time of deceased's death.

The arguments advanced by both parties and the many citations of authority to support them have been ably presented to this Court by respective counsel in their briefs. The evidence in the case has been carefully reviewed by this Court. We do not deem it necessary to discuss or pass on each and every argument set forth in the briefs. It is clear that the lower tribunal weighed the evidence before it and applied the applicable law to the facts.

■ A finding by the State Industrial Court, as to dependency, under the death benefit provisions of the Workmen's Compensation Act, will not be disturbed on review where such finding is reasonably supported by competent evidence. Hogue v. Smith, Okl., 393 P.2d 855; Akin v. Akin Distributors, Okl., 386 P.2d 769; Boardman Company v. Eddy, Okl., 363 P.2d 821; Pawhuska Feed Mills v. Hill, Okl., 289 P.2d 671; Robberson Steel Co. v. State Industrial Court, Okl., 354 P.2d 211; G. I. Construction Co. v. Osborn, 208 Okl. 554, 257 P.2d 1056; Oklahoma State Highway Dept. v. Nash, Okl., 297 P.2d 412; Inter-

national Harvester Co. v. Harris, Okl., 272 P.2d 1046; Cimarron Telephone Co. v. Nance, 208 Okl. 622, 255 P.2d 931.

Whether claimant was an heir and dependent of deceased were questions of fact to be determined by the State Industrial Court and its findings thereon will not be disturbed on review where such findings are reasonably supported by competent evidence. The lower court found that claimant was an heir at law of deceased and was dependent upon deceased within the meaning of the death benefit provisions of the Workmen's Compensation Act and such findings are reasonably supported by competent evidence.

The award is sustained.

BLACKBIRD, C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.