1445

Anthony BROWN, Deceased, Employee, Joann C. Brown, Widow, Jonita A. Brown, Minor Child, Claimants, Appellants v. RYDER TRUCK RENTAL, Employer and Ryder Services Corporation and Linda Michelle Suber, of whom Linda Michelle Suber is the Respondent.

(389 S. E. (2d) 161)

Court of Appeals

*Merl F. Code* and *Jeff Weston*, Greenville, *for appellants.*

*Alan C. Cochran* and *Craig H. Allen*, both of *Williams & Henry*, Greenville, *for respondent.*

Heard Dec. 6, 1989.

Decided Jan. 2, 1990.

GOOLSBY, Judge:

This workers' compensation case arises out of the death of Anthony Brown, an employee of Ryder Truck Rental. Joann Crawford Brown and Jonita A. Brown appealed to the Circuit Court after the South Carolina Workers' Compensation Commission, in a divided decision, affirmed the order of the single commissioner finding Linda Michelle Suber to be the acknowledged illegitimate daughter of the deceased and requiring benefits awarded the Browns to be shared with Linda. The Circuit Court affirmed. We affirm also.

The Browns' appeal presents two issues: (1) whether the Commission has jurisdiction to determine the issue of paternity when determining dependency and (2) whether the Commission's finding that Linda is the acknowledged illegitimate daughter of the deceased employee is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.

Anthony Brown died on June 25, 1987, in an industrial accident. His wife Joann, whom he married on August 12, 1983, survived him, as did their daughter Jonita.

Linda was born on September 1, 1979, to Anginelle Suber who was then married to David Suber. Anginelle Suber, however, had separated from her husband in 1972 when she and their four children went to live with her mother some 40 miles away. She saw her husband only when he visited their children at her mother's. The Subers divorced in 1981. Although Linda's birth certificate names David Suber as her father, the divorce decree neither lists Linda as his child nor requires him to support her.[1]

---

[1] We recognize that nothing in the record shows Linda either was a party to the Subers' divorce proceedings or was represented by a guardian *ad litem*. Although the Browns question whether Linda is bound by the divorce decree, Linda herself chooses not to raise this issue. *See Prather v. Tupper*, 267 S. C. 636, 230 S. E. (2d) 712 (1976) (a determination that a child was illegitimate must be set aside where the child was not represented by a guardian *ad litem* in the action).

Anthony Brown, who previously had a sexual relationship with Anginelle Suber, expressly acknowledged Linda as his child two years or so after her birth. He thereafter gave her gifts, bought her clothes, took her places, posed with her in pictures, paid her doctor bills, and visited with her twice a month. The child called him Daddy.

The commission expressly based its award to Linda entirely upon Section 42-1-70 of the South Carolina Code of Laws (1976).[2]

## I.

We address first the issue regarding the Commission's jurisdiction to determine the issue of paternity when determining dependency.

In South Carolina, "[a]ll questions arising under [the Workers' Compensation Act] ... shall be determined by the Commission, except as otherwise provided in [the Act]." S. C. CODE ANN. Sec. 42-3-180 (1976). *See Caughman v. Columbia Y.M.C.A.*, 212 S. C. 337, 47 S. E. (2d) 788 (1948) (the Workers' Compensation Act is wholly substitutional in character); *Cook v. Mack's Transfer & Storage*, 291 S. C. 84, 352 S. E. (2d) 296 (Ct. App. 1986) (the Workers' Compensation Act provides an exclusive system of compensation). Nowhere in the Workers' Compensation Act does it otherwise provide that the question of paternity is not to be determined by the Commission where, as here, the question arises under the Act when the Commission undertakes to determine dependency. Indeed the Act clearly contemplates that the Commission will determine the question of paternity when it determines dependency in that the Act, in Section 42-1-70 thereof, defines the term "child" to include an "acknowledged illegitimate child dependent on the deceased" and the Act, in Section 42-9-110 thereof, deems a surviving child to be "conclusively presumed to be wholly dependent for support on a deceased employee." *See Flemon v. Dickert-Keowee*, 259 S. C. 99, 190 S. E. (2d) 751 (1972) (a deceased employee's acknowledged illegitimate children

---

[2] Section 42-1-70 of the South Carolina Code of Laws provides in part:

The term "child" shall include a[n] ... acknowledged illegitimate child dependent upon the deceased....

held to be conclusively presumed to be wholly dependent for support on the deceased employee).

We therefore hold that, absent an express statutory restriction on the broad power of the Commission to determine a deceased worker's dependents under the Act, the Commission has jurisdiction to determine the issue of paternity when determining dependency. *Rios v. Industrial Commission*, 120 Ariz. 374, 586 P. (2d) 219 (Ct. App. 1978); *see Labouseur v. Harleysville Mutual Insurance Co.*, 298 S. C. 213, 379 S. E. (2d) 291 (Ct. App. 1989), *cert. granted*, S. Ct. Order dated October 5, 1989 (absent a statute conferring jurisdiction elsewhere, the Commission has exclusive jurisdiction to entertain a claim by an employer that an insurer and its agent wrongfully cancelled the employer's workers' compensation policy); *cf. Palm v. General Painting*, 296 S. C. 41, 370 S. E. (2d) 463 (Ct. App. 1988), *cert. granted*, S. Ct. Order dated January 11, 1989 (wherein the Court of Appeals upheld the Workers' Compensation Commission's paternity findings).

We do not overlook Section 20-7-420 of the Code, the statute relied on by the Browns to support their contention that the Commission lacked jurisdiction to decide the question of Linda's paternity. Under subsections (7) and (11) of Section 20-7-420, the Family Court has "exclusive jurisdiction" "[t]o hear and determine actions to determine the paternity of an individual" and "[t]o hear and determine proceedings . . . to compel the support of a . . . child, whether legitimate or illegitimate." Even though the determination of dependency necessarily requires a resolution of the issue of paternity, nothing in Section 20-7-420, however, either gives the Family Court exclusive jurisdiction to determine dependency under the Workers' Compensation Act or restricts the Commission's jurisdiction to determine the issue of dependency where death benefits are claimed by a "child" under the Workers' Compensation Act.

## II.

We now consider the issue of whether the Commission's finding that Linda is the acknowledged illegitimate daughter of the deceased employee is clearly erroneous in view of the reliable, probative, and substantial evidence on the

whole record. This finding cannot be reversed unless it is so. S. C. Code Ann. Sec. 1-23-380(g)(4) and (5) (1976); *Palm v. General Painting Co., supra.*

A child born in lawful wedlock is presumed to be ▮▮ legitimate. *Chandler v. Merrell*, 291 S. C. 224, 353 S. E. (2d) 133 (1987). This presumption, however, can be rebutted by clear evidence that it was impossible for the husband to have been the father of the child. *Barr's Next of Kin v. Cherokee, Inc.*, 220 S. C. 447, 68 S. E. (2d) 440 (1951).

Here, as in *Palm*, the Commission made an implied ▮ finding that the presumption of legitimacy was rebutted. The Commission did so when it expressly found Linda to be Brown's acknowledged illegitimate child. It could not have found Linda is Brown's acknowledged illegitimate child without having first found, of course, that Linda is not the legitimate child of David Suber, the husband of Linda's mother at the time Linda was conceived.

Reliable, probative, and substantial evidence on the whole record supports both the Commission's implied finding that the presumption of legitimacy was rebutted and the Commission's express finding that Brown acknowledged Linda as his child. Linda's mother testified, without contradiction, that she and her husband had long been separated when she conceived Linda. She also testified, without objection, that she did not have sexual intercourse with anyone other than Brown "within a year" of the child's birth,[3] thus making it impossible for David Suber to have carnally fathered Linda. In addition, other witnesses testified that Brown claimed Linda as his own and, in ways earlier summarized, exhibited his acceptance of her as his daughter. *See In re Findlay*, 253 N. Y. 1, 170 N. E. 471, 473 and 474 (1930) (wherein the court, in an opinion by Judge Cardozo, held the presumption of

---

[3] By the Commission's receiving this testimony without objection, it became competent. *Cantrell v. Carruth*, 250 S. C. 415, 158 S. E. (2d) 208 (1967); 88 C. J. S. Trial Sec. 150 at 295-96 (1955); *cf.* S. C. Code Ann. Sec. 20-7-956 (1976) ("The following evidence is admissible at a hearing to determine paternity: ... (5) The testimony of a ... wife as to any relevant matter, including ... parentage."); *South Carolina Department of Social Services v. Burris*, 297 S. C. 537, 377 S. E. (2d) 578 (1989) (a mother and her separated husband may testify in a paternity proceeding regarding nonaccess).

legitimacy had been overcome by evidence weighed "in the light of experience and reason," such evidence including the putative father's acceptance of the child and the improbability of the husband engaging in "carnal commerce" with his runaway wife who lived in open adultery).

Accordingly, the judgment is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.

