839 A.2d 256

**Ashley ROSSA, a Minor Through her Mother, Patricia ROSSA, Appellee**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Appellant.**

Supreme Court of Pennsylvania.

Argued April 9, 2003.

Decided Dec. 30, 2003.

Robert P. Schenck, Audrey J. Copeland, Newtown Square, for City of Philadelphia, appellant.

Amber Marie Kenger, Mechanicsburg, Richard C. Lengler, Harrisburg, for W.C.A.B., appellee.

Marc S. Jacobs, Philadelphia, for Patricia Rossa, appellee.

BEFORE: CAPPY, C.J., AND CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN AND LAMB, JJ.

## *OPINION*

JUSTICE LAMB.

In this appeal we are asked to answer the following questions: does a Workers' Compensation Judge (WCJ) have the authority to determine paternity in a proceeding under the Workers' Compensation Act [1] (Act) and, if so, what evidentiary standard must be met in order to prove paternity? [2] For the reasons that follow, we hold that a WCJ does have the authority to determine paternity, not for all purposes, but for purposes of determining the eligibility of a child for benefits and that such eligibility must be established by a preponderance of the evidence. Because Appellee proved eligibility by a preponderance of the evidence and the Commonwealth Court granted the fatal claim petition on that basis, we affirm the order of the Commonwealth Court. We need not reach beyond the question of eligibility and, so, do not.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.1, 2501–2626. Until 1993, the Act was known as the "Workmen's Compensation Act." It was renamed the "Workers' Compensation Act" by Act 1993–44, Act of July 2, 1993, P.L. 190, commonly known as "Act 44".

2. Allocatur was granted limited to the two questions as stated. *Rossa ex rel. Rossa v. W.C.A.B. (City of Philadelphia)*, 570 Pa.1, 807 A.2d 871 (2002).

On December 13, 1990, Patricia Ann Rossa (Rossa), age nineteen, gave birth to Ashley Lauren Rossa (Claimant). On February 6, 1991, Daniel R. Boyle (Decedent), a twenty-one-year-old Philadelphia police officer, died as the result of a gunshot wound to the head, sustained in the course and scope of his employment. The issue of paternity arose in the context of a fatal claim petition filed on March 20, 1992 by Rossa, on behalf of Claimant, in which she claimed that Decedent was Claimant's father.[3] The City of Philadelphia (Employer) denied that Claimant was Decedent's daughter and that she was eligible for fatal claim benefits.

On October 25, 1995, the WCJ placed the matter in indefinite postponement status to allow the parties the opportunity to file a paternity claim in the Philadelphia Court of Common Pleas. On August 5, 1999, Claimant's counsel requested that the case be removed from inactive status. Employer's counsel objected to the reactivation because no paternity order had been issued by the common pleas court. Nevertheless, a hearing was held on October 22, 1999.

On April 20, 2000, the WCJ issued findings of fact, conclusions of law, and an order directing Employer to pay death benefits to Claimant. After summarizing the testimony, the WCJ made the following finding of fact:

16. This WCJ ... finds from the testimony of Patricia Rossa and the other fact witnesses who testified on her behalf, that Ashley L. Rossa is the daughter of Decedent, Daniel Boyle. This WCJ finds [Rossa's] testimony credible that during the period she and Decedent dated, they had sexual relations. This WCJ finds [Rossa's] testimony credible that she dated Decedent up until March 17, 1990. This WCJ finds [Rossa's] testimony credible and convincing that during the period she and Decedent were dating and engaging in sexual relations, [Rossa] did not date other men. This WCJ finds consistency in [Rossa's] testimony and the

3. Section 307 of Act 44 identifies who is entitled to death benefits and in what amounts. Specifically, Section 307 provides that if there is no widow, compensation is to be paid to the decedent's child or children. Section 307 is reported in Sections 561, 562 and 542 of Title 77 of Purdon's Pennsylvania Statutes, 77 P.S. 561, 562 and 542.

testimony of the fact witnesses on her behalf and the actions [Rossa] and the fact witnesses undertook in their belief that Decedent was the father in this matter, specifically [Rossa] contacting Decedent in April 1990 informing him of the pregnancy; [Rossa's stepfather] engaging in discussion with Decedent regarding support; [Rossa's mother]'s contacts with the Decedent during Ms. Rossa's pregnancy and the telephone contact with Decedent on the day of Ashley Rossa's birth, and [Rossa's] naming Decedent, upon Ashley Rossa's birth, on the Certificate of Birth, same Birth Certificate filed before Daniel Boyle's death.

*Rossa ex rel. Rossa v. WCAB (City of Philadelphia)*, 794 A.2d 919, 920–21 (Pa.Cmwlth.2002) (quoting April 20, 2000 Decision of WCJ at 7). "The WCJ rejected the testimony of Thomas Boyle, Sr., Decedent's father, to the extent it was inconsistent with the finding that Decedent was Claimant's father. Having so concluded, the WCJ granted the fatal claim petition." *Id.* at 921.

Employer filed a timely appeal to the Workers' Compensation Appeal Board (Board). On December 14, 2000, the Board vacated the WCJ's decision on grounds that "issues of paternity are beyond our scope ... and thus, we would defer to the expertise of the courts of common pleas on these issues." Workers' Compensation Appeal Board slip op. at 4–5 (footnote and citations omitted).

The Commonwealth Court, by an opinion and order dated March 18, 2002, reversed. The Commonwealth Court believed that no Pennsylvania case had decided whether a worker's compensation fact-finder has the authority to determine paternity.

Appellate review in workers' compensation matters is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether the practices and procedures of the Workers' Compensation Bureau were followed, and whether the findings of fact made by the WCJ and necessary to support its decision were supported by substantial evidence. 2 Pa.C.S. § 704; *Gunter v. WCAB*

*(City of Philadelphia)*, 573 Pa.386, 825 A.2d 1236, 1238 (2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *Bethenergy Mines v. WCAB (Skirpan)*, 531 Pa.287, 612 A.2d 434, 436 (1992). Because this appeal raises questions of law, our standard of review is plenary. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

The Act vests in the WCJ the responsibility of determining to whom compensation must be paid by the employer. 77 P.S. § 561(1). When the employee dies as a result of the accident at-work or other compensable injury and if the issue is disputed, the WCJ must decide from the evidence presented whether there is a surviving spouse and whether there are children [4] and, if so, how many; whether, if there is neither surviving spouse nor children, there is a parent who was dependent on the employee at the time of the injury and, if so, whether the parent was totally dependent upon the deceased employee; if there are none of the above, then whether there are brothers or sisters actually dependent upon the decedent and, if so, how many. 77 P.S. § 561(1).[5]

4. A child's right to receive workers' compensation arises from his or her status as a child of the employee, and actual dependency upon the deceased is not required. *Mohan v. Publicker Indus., Inc.*, 202 Pa.Super. 581, 198 A.2d 326 (1964). It is no longer relevant that a decedent was not married to the child's mother. *Lehigh Founds., Inc. v. WCAB*, 39 Pa.Cmwlth. 416, 395 A.2d 576 (1978). The fact that decedent fathered a child who is under 18 years of age, without more, makes the child eligible for benefits. *Hoffer Transp. Co. v. WCAB*, 66 Pa.Cmwlth. 310, 443 A.2d 1381, 1383 (1982).

5. For instance, with respect to the disputed claim of a surviving spouse, WCJ's have determined that a common law marriage existed between a claimant and a decedent, *Brandywine Paperboard Mills v. WCAB (Zittle)*, 751 A.2d 1205 (Pa.Cmwlth.2000); that there was no common law marriage, *Bowden v. WCAB*, 31 Pa.Cmwlth. 476, 376 A.2d 1033 (1977); and that a surviving spouse was involved in a meretricious relationship following a decedent's death, *McCusker v. WCAB (Rushton Mining Co.)*, 145 Pa.Cmwlth.261, 603 A.2d 238 (1992). *See also Bethenergy Mines, Inc. v. WCAB (Sadvary)*, 524 Pa.235, 570 A.2d 84 (1990) (holding that termination of benefits because of a meretricious relationship was discretionary), *rev'g* 117 Pa.Cmwlth. 465, 543 A.2d 1268 (1988).

The question in this case, whether a worker's compensation fact-finder has the authority to determine parentage as an issue necessary to the claim, is rooted in the same question this Court decided unanimously in *Cairgle v. American Radiator and Standard Sanitary Corp.*, 366 Pa. 249, 77 A.2d 439 (1951). There, the WCJ was charged with deciding whether the claimant children were fathered by the decedent with his estranged wife. In *Cairgle* the issue of parentage was a necessary predicate to the disposition of a claim petition, even though it was contrary to the presumption (said at that time to be "still one of the strongest known to the law") of the legitimacy of a child born to an intact marriage. *Cairgle*, 77 A.2d at 442. There, as here, the material testimony was offered by the mother of the claimants. In *Cairgle*, however, the fact-finder found the mother's testimony incredible and did not award benefits to the claimants. In this case, the WCJ found the mother's testimony credible and did award benefits.

Returning to the scope of appellate review in the Administrative Agency Law,[6] we note that the General Assembly identified express criteria for review of agency adjudications:

> After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

2 Pa.C.S. § 704; *see Leon E. Wintermyer, Inc. v. WCAB (Marlowe)*, 571 Pa.189, 812 A.2d 478, 484–85 (2002).

Given the familial relationships that the WCJ must often disentangle, determining the eligibility of a child is not an extraordinary task. It is a responsibility that the WCJ is well able to assume. Because the WCJ has the duty to determine who is to be compensated upon the death of an employee, the

6. Act of April 28, 1978, P.L. 202, No. 53, *as amended*, 2 Pa.C.S. §§ 501–508, 701–704.

WCJ necessarily has the authority to determine paternity, for the purposes of the eligibility of a child. Nothing in the decision of eligibility violates Section 704; therefore, this Court has no grounds to reverse.

We now turn to the question of the appropriate standard of proof for deciding the issue of eligibility of a child in workers' compensation proceedings. It is clear that the general evidentiary burden on worker's compensation claimants, as it is traditionally formulated, is to prove the necessary factual elements of the claim by a preponderance of the evidence. *Walker v. Heavey,* 207 Pa.Super. 528, 219 A.2d 466, 468 (1966); *Schuch v. Harbison's Dairies,* 150 Pa.Super. 582, 29 A.2d 216, 218 (1942); *Stauffer v. Susquehanna Collieries Co.,* 116 Pa.Super. 277, 176 A. 740, 741 (1935). The Act as well as the regulations promulgated thereunder codify this standard. *See, for example,* Section 413 of the Act, 77 P.S. § 774(1), 34 Pa.Code § 131.49.

We asked the parties to consider the factors set forth in *Minnich v. Rivera,* 509 Pa. 588, 506 A.2d 879 (1986), *aff'd sub nom, Rivera v. Minnich,* 483 U.S. 574, 107 S.Ct. 3001, 97 L.Ed.2d 473 (1987), to assist us in determining whether constitutional concerns appurtenant to paternity required a higher evidentiary standard than other facts found by the WCJ. Employer contends that paternity must be established by clear and convincing evidence. In *Minnich,* we held that the statutory preponderance of the evidence standard of proof for paternity did not violate constitutional principles and that "[i]t is within the province of the legislature to prescribe a standard of proof applicable to particular actions and proceedings so long as the standard announced meets minimum due process requirement." *Id.,* 506 A.2d at 881. The United States Supreme Court affirmed, holding that the preponderance standard complies with the Due Process Clause of the Fourteenth Amendment. There is nothing in the Act or unique to worker's compensation law which commands imposing a more stringent standard of proof in WCJ proceedings.

Accordingly, we affirm the order of the Commonwealth Court and we remand the matter to the Bureau of Workers' Compensation for proceedings consistent with this opinion.

Justice NIGRO files a dissenting opinion.

Justice NEWMAN files a dissenting opinion.

JUSTICE NIGRO DISSENTING.

As I disagree with the majority's holding that a workers' compensation judge has the authority to determine the paternity of a child in the context of workers' compensation proceeding, I must respectfully dissent.

In my view, paternity must always be decided by the courts of common pleas. Indeed, I believe that the General Assembly has indicated its intent that paternity decisions be made by the trial courts through its enactment of several statutes that specifically refer to the trial courts' authority to decide paternity and establish the procedures to be used by the trial courts in making such a decision. *See* 23 Pa.C.S. § 4343 (in the context of support matters, providing that "paternity shall be made by the court in a civil action without a jury," empowering the trial court to order genetic testing in paternity cases, and setting forth the procedures for bringing such an action, the burden of proof to be applied, and the effect of paternity decisions made by other state courts); 23 Pa.C.S. § 5104 (authorizing the trial court to order blood tests to determine paternity and explaining how the tests may be used at trial); 20 Pa.C.S. § 2107 (providing that male may be deemed father of child born out of wedlock for purposes of intestacy decisions if there has been "a prior *court determination* of paternity") (emphasis added); *see also* Pa. R.C.P. 1910.15 (detailing procedures associated with paternity determination in support actions before trial court, including rules regarding genetic testing, the effects of such testing, and the appealability of the paternity determination).

Moreover, because paternity impacts "substantial liberty interests" of both the father and child, I believe that due process concerns mandate that paternity always be tried before a trial court pursuant to the Rules of Civil Procedure

and the Rules of Evidence rather than before a workers' compensation judge where more lenient rules of procedure and evidence apply. *See Corra v. Coll,* 305 Pa.Super. 179, 451 A.2d 480, (1982) (finding paternity decisions implicate important privacy interests that require certain procedural due process safeguards, such as the right to appointed counsel); 77 P.S. § 834 (providing that "[n]either the board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation"); *Anzaldo v. Workers' Compensation Appeal Bd. (M & M Restaurant Supply Co.),* 667 A.2d 488, 491, 493 (Pa.Commw.1995) (deciding issues in case on basis of liberal rules of procedure and evidence in workers' compensation cases); *Frey v. Lehigh Engineering Co.,* 202 Pa.Super. 596, 199 A.2d 287, 290 (1964) (noting that evidentiary rules are relaxed in workers' compensation cases to encourage claimants to proceed without counsel and that given the relaxation of evidentiary rules, hearsay is admissible).[1]

Accordingly, I would reverse the Commonwealth Court's decision affirming the workers' compensation judge's paternity determination and remand the case for the trial court to determine the issue of paternity with regard to Appellee Ashley Rossa.

## JUSTICE NEWMAN DISSENTING.

"O heavens! [is] this ☐ my true-begotten father."

WILLIAM SHAKESPEARE, THE MERCHANT OF VENICE, act II, sc. 2.

The Majority concludes that a Workers' Compensation Judge (WCJ) has the authority to determine paternity within the context of a Workers' Compensation Act (Act)[1] benefits

---

1. As the parties did not question the workers' compensation judge's authority to determine paternity in *Cairgle v. Am. Radiator Sanitary Corp.,* 366 Pa. 249, 77 A.2d 439 (1951), I, unlike the majority, do not believe that this Court is in any way bound by that decision in determining whether the workers' compensation judge had the authority to decide paternity here.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

proceeding, and that paternity must be established by a preponderance of the evidence. Because I believe that paternity determinations must be rendered in the courts of common pleas, I must respectfully dissent.

At common law, a child born out of wedlock was subject to serious social and legal disabilities, with paternity actions governed by criminal law. *See, e.g.,* Wilful separation or nonsupport, Act of June 24, 1939, P.L. 872, 18 P.S. § 4731 (a parent who "willfully neglects or refuses to contribute reasonably to the support and maintenance of a child born out of lawful wedlock" is guilty of the misdemeanor of "Neglect to Support Bastard") (superceded by statute). The illegitimate child was viewed as the child of no one, *filius nullius,* or a child of the people, *filius populis,* and could neither inherit nor assert entitlement to support from his or her mother or putative father. Justice Musmanno, in dissent in *Commonwealth v. Dillworth,* 431 Pa. 479, 246 A.2d 859, 867 (1968), described the beginning of enlightenment concerning children born out of wedlock as follows:

> [T]he Common Law, as it gradually emerged from the cruelties, superstitions and illogicalities of medieval customs, began to recognize the moral responsibility owed by the community to illegitimate children, and, in that recognition, it decided to impose a financial responsibility on the bastard father. This financial responsibility was in no way associated with the moral turpitude attached to the act which preceded the birth of the child. The offense of carnality beyond matrimonial relationship was a matter for the State to consider. Thus, arose the crime of fornication for which the State imposed a penalty.

The first amelioration of these harsh rules was the judicially created presumption of legitimacy when a child was born to a married woman. *See, e.g., Commonwealth v. Shepherd,* 6 Binn. 283, 1814 WL 1374 (Pa.1814). Thus, if the woman was married at the time she gave birth to a child, there was an irrebuttable presumption that the child was the product of the marriage, unless the husband had no access to his wife. It was within this framework that this Court, in 1951, decided

the case of *Cairgle v. American Radiator & Standard Sanitary Corp.*, 366 Pa. 249, 77 A.2d 439 (1951) (superceded by statute, Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S. § 6131, et seq.). While *Cairgle* stemmed from a decision by a referee[2] concerning the paternity of three illegitimate children, the basic issue related to whether or not the presumption of legitimacy had been overcome. This Court held that it had and declared the children not the children of Mr. Cairgle. The issue of the jurisdiction of the referee to decide an issue of paternity was neither raised nor decided by this Court in that case.

Further inroads were made to combat the harshness of treatment afforded to illegitimate children. The stigma attached to offspring born out of wedlock subsequently eroded from the absence of any rights at all, to all the rights and privileges of children born as a result of an actual marriage, with few exceptions. One of the rights bestowed on both legitimate and illegitimate children alike is the right to support, pursuant to the Act, when their father dies from a work-related injury. However, implicit in this right is the fact that the child **is** the legitimate or illegitimate child of the injured worker. This determination must be made as a condition precedent prior to filing the claim for support benefits, not, as here, during the proceeding itself. My esteemed colleague sees the instant matter as an eligibility issue, and I believe that he is correct. Eligibility for benefits is all that the WCJ is empowered to decide. The claimant child must bring to the WCJ proof of parentage in the form of a paternity determination that legitimizes his or her claim to support.

Proceedings to establish paternity have always been made in the courts of this Commonwealth. The Pennsylvania Civil Procedure Support Law, Act of July 13, 1953, P.L. 431, required every judicial district to establish a Domestic Relations Division for the purpose of keeping a full and complete record of all support proceedings. As originally enacted, this law did not provide for the support of illegitimate children.

---

**2.** Prior to the 1993 amendments to the Act, the role now fulfilled by workers' compensation judges was performed by referees.

However, in 1963, the statute was amended to include an action for support of illegitimate children in the courts of common pleas. Act of August 14, 1963, P.L. 872, § 1. Prior to the adoption of this amendment, an order for support of an illegitimate child could only be entered after a determination of paternity had been established by criminal proceedings in the courts of common pleas pursuant to Section 506 of the Penal Code, 18 P.S. § 4506 (no longer in force). *Dillworth*, 246 A.2d at 862. Subsequently, the Act of April 28, 1978, P.L. 106, amending the Civil Procedure Support Law, abolished criminal actions and provided that the issue of paternity be resolved only in a civil action in the courts of common pleas. Enactments relative to the procedures and limitations of paternity actions were contained in the Judicial Code until the new Rule of Civil Procedure relating to paternity determinations, Pa.R.C.P.1910.15, was adopted on April 23, 1981. It sets forth the practice and procedure, as part of a support action, relative to paternity determinations. Thus, paternity actions have always been decided in this Commonwealth, whether civil or criminal, in the courts of common pleas.

The General Assembly and this Court, in establishing specific procedures for paternity determinations, have not conferred on administrative agencies the right to make these decisions. Section 4341 of the Domestic Relations Code indicates that a paternity proceeding is a civil action governed by the Pennsylvania Rules of Civil Procedure "governing actions of support." 23 Pa.C.S. § 4341. Section 4343 of that same Code, 23 Pa.C.S. § 4343, relating to support matters generally, states in pertinent part:

Where the paternity of a child born out of wedlock is disputed, the determination of paternity shall be made by the *court in a civil action* without a jury.

(Emphasis added.) Paternity determinations governed by the Domestic Relations Code break down generally into two divisions—those relative to paternal benefits and those related to decent and intestacy. Section 5102 of the Domestic Relations Code, which relates to paternal benefits, specifies that:

**(b) Determination of paternity.**—For purposes of prescribing *benefits* to children born out of wedlock *by, from and through the father,* paternity shall be determined by any one of the following ways:

(1) If the parents of a child born out of wedlock have married each other.

(2) If, during the lifetime of the child, it is determined by clear and convincing evidence that the father openly holds out the child to be his and either receives the child into his home or provides support for the child.

(3) If there is clear and convincing evidence that the man was the father of the child, which may include a prior court determination of paternity.

23 Pa.C.S. § 5102 (emphasis added). It is beyond cavil that Ashley Rossa is seeking the benefit of support provided pursuant to the Act because of the work-related injury and death of Daniel Boyle. Further, the Rules of Civil Procedure, which are not applicable in a workers' compensation proceeding, specifically address paternity determinations. *See* Pa. R.C.P. Nos. 1910.4, 1910.7, 1910.15 (support); 1915.3 (custody); and 1930.6 (filing of paternity actions outside of custody and support).

An action for workers' compensation benefits by a child is a derivative action that cannot be brought by the child in common pleas against the employer, but may only be initiated in the workers' compensation forum by the injured employee. It is the employee's right to benefits and the corresponding provision for death benefits that provide the injured worker's family a right to relief. The operative presumption here is that a member of the injured workers' family must make application for those benefits. That presumption is satisfied, pursuant to 23 Pa.C.S. § 5102, when the court of common pleas renders its paternity determination.

Upon review of the caselaw of other jurisdictions that have decided this issue, it appears that, in general, the courts have found that workers' compensation judges (or the jurisdictional equivalent) have been accorded the authority to determine

matters of paternity, usually by statute. Of the fourteen jurisdictions surveyed, eleven permit workers compensation judges to determine paternity with restrictions,[3] one jurisdiction authorizes the determination without restriction,[4] and two jurisdictions do not permit a workers' compensation judge to decide paternity at all.[5] It is noteworthy that, in those jurisdictions where the workers' compensation judge may determine paternity, the requirements for that determination are similar or identical to the requirements set by our General Assembly for paternity determinations.

Manifestly, the legislative purpose of the evidentiary standards promulgated by the General Assembly in child support and inheritance statutes is to minimize the risk of fraudulent paternity claims. There is a similar risk in workers' compensation petitions that is made even greater by the informality of the proceedings. While it should be axiomatic that a person who claims to be the child of a decedent has the burden of

3. Those jurisdictions were represented by the following cases: *Rios v. Indus. Comm'n of Ariz.*, 120 Ariz. 374, 586 P.2d 219 (1978) (child must have been acknowledged and supported by father); *Dillon v. Indus. Comm'n*, 195 Ill.App.3d 599, 142 Ill.Dec. 341, 552 N.E.2d 1082 (1990) (must have genetic testing); *Goins v. Lott*, 435 N.E.2d 1002 (Ind.App. 1982) (child must have been acknowledged and supported); *R.L.J. & J.J.J. v. Western Sprinklers*, 17 Kan.App.2d 749, 844 P.2d 37 (1992) (only binding for workers compensation purposes); *Copple v. Bowlin*, 172 Neb. 467, 110 N.W.2d 117 (1961) (only if no question of inheritance and child has been acknowledged and supported); *Carpenter v. Hawley*, 53 N.C.App. 715, 281 S.E.2d 783 (1981) (child must have been acknowledged and supported by father); *State of Ohio ex rel. Wilson v. Indus. Comm'n of Ohio*, 2002 WL 1933350 (Ohio App.2002) (based on genetic testing); *Cox v. State Indus. Court*, 397 P.2d 668 (Okla.1964) (child must have been acknowledged and supported by father); *In re Sassmen, deceased; Amos & Sassmen v. SAIF Corp.*, 72 Or.App. 145, 694 P.2d 998 (1985) (child must have been acknowledged and supported by father); *Brown v. Ryder Truck Rental*, 300 S.C. 530, 389 S.E.2d 161 (Ct.App.1990) (child must have been acknowledged and supported by father); and *Allstate Messenger Serv. v. James*, 220 Va. 910, 266 S.E.2d 86 (1980) (child must have been acknowledged by father).

4. *Bettelon v. Metalock Repair Serv.*, 137 Mich.App. 448, 358 N.W.2d 608 (1984) (no restrictions).

5. *Poole Truck Lines v. Coates*, 833 S.W.2d 876 (Mo.App.1992) (only civil courts can determine paternity); and *Taylor v. Morris*, 88 Wash.2d 586, 564 P.2d 795 (1977).

proving that the decedent was his or her parent, no documentary evidence of paternity was introduced in the instant matter.

I believe that the General Assembly and this Court have declared that the appropriate place in which to prove paternity is the court of common pleas. The determination of paternity is really a biological question to be resolved for the purpose of enforcing a civil duty, *i.e.* the obligation to support the child, wholly unrelated to the workplace injuries and loss of earning power of the workers' compensation arena. The safeguards surrounding paternity actions should be even greater with the death of the putative father, not relaxed as in a workers' compensation proceeding. As the Superior Court has stated, the "claims of paternity made after the lips of the alleged father have been sealed by death are in that class of claims which must be subjected to the closest scrutiny and which can be allowed only on strict proof so that injustice will not be done." *Estate of Hoffman,* 320 Pa.Super. 113, 466 A.2d 1087, 1089 (1983). Further, this Court has stated that a putative father "has procedural and substantive due process rights" that must be met. *John M. v. Paula T.,* 524 Pa. 306, 571 A.2d 1380, 1385 (1990), *cert. denied,* 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990). This is not accomplished by having a workers' compensation judge determine paternity within the informality of a death benefits proceeding, outside the purview of the statutory guidelines. The initial WCJ afforded Patricia Rossa an opportunity to litigate the issue of paternity in the appropriate forum. She failed to do this over a period of several years and patently ignored her opportunity to have a proper paternity determination rendered. Accordingly, I believe that this Court should reverse the Order of the Commonwealth Court.